**UNITED STATES of America, Appellee,**

v.

**Herman Eugene LARDIERI, Appellant.**

**No. 73–1750.**

United States Court of Appeals, Third Circuit.

Argued Jan. 9, 1974.

Reargued before the original panel Sept. 13, 1974.

Decided Dec. 18, 1974.

Richard L. Thornburgh, U. S. Atty., Pittsburgh, Pa., Carl L. LoPresti, Michael P. Lesniak, Sp. Attys., U. S. Dept. of Justice, Organized Crime & Racketeering Section, Pittsburgh, Pa., for appellee.

Louis J. Grippo, Pittsburgh, Pa., for appellant.

Before ADAMS, HUNTER and WEIS, Circuit Judges.

ADAMS, Circuit Judge:

The issue posed by the petition for rehearing before the panel is whether an indictment for perjury allegedly committed during the course of testimony before a grand jury may be dismissed because of the failure by the prosecutor to inform the witness of the recantation provision of § 1623.[1]

---

1. 18 U.S.C. § 1623 (Supp.1974):

"(a) Whoever under oath in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information, including any book, paper, document, record, recording, or other material, knowing the same to contain any false material declaration, shall be fined not more than $10,000 or imprisoned not more than five years, or both. . . .

"(d) Where, in the same continuous court or grand jury proceeding in which a declaration is made, the person making the declaration admits such declaration to be false, such admission shall bar prosecution under this section if, at the time the admis-

a.

The events leading to Herman Lardieri's perjury conviction occurred during an investigation of the tax affairs of Louis Sorrentino. Lardieri performed some managerial functions at Steurer's Restaurant in Altoona, which was owned from July, 1967 to July, 1969 by Sorrentino, a New York City resident. The connection between Lardieri's activities and the financial interests of Sorrentino prompted the government to seek information from Lardieri. Agent Dye of the Internal Revenue Service accordingly interviewed Lardieri in June of 1971. During the interview, Agent Dye questioned Lardieri with respect to the execution of checks drawn on the restaurant's account. Lardieri stated to Agent Dye that he did sign some of the restaurant's checks.

On April 10, 1972, Lardieri was subpoenaed to testify before a special grand jury. The subpoena was served on Lardieri the day before he was to appear.

At the grand jury proceeding, Lardieri was examined on the procedures by which the restaurant's checks were made out and signed. He testified that he "never signed a check as long as the place [Steurer's Restaurant] was there." The prosecutor, apparently recognizing an inconsistency between Lardieri's statements to Agent Dye and his grand jury testimony, engaged with Lardieri in the following exchange:

Q. Did you sign a bank signature card at that time. At the bank?

A. I don't remember.

Q. Mr. Lardieri, do you know what perjury is?

A. (No response.)

Q. Do you know what perjury is?

A. No.

Q. You don't know?

A. I don't know what perjury is.

Q. You have no idea what perjury is?

A. You have to tell the truth and if you don't tell the truth, you wind up in jail.

Q. And there is also a $10,000 fine as well. Now, with that in mind, I will ask you again: did you participate in any way in the opening of the account for Steurer's Restaurant at Mid-State Bank?

A. I don't remember.

Q. Were you authorized to sign checks on that account?

A. No, I know that.

    .      .      .      .      .

Q. I don't think you have been candid with us today, with the members of the grand jury.

A. I told you the truth.

Q. I will tell you what I am going to do. I am going to give you a chance to straighten out your testimony.

A. That is it.

Q. Is there anything that you have said in here today that you would like to modify or change?

A. No, just put down what I said.

    .   .   .

On the basis of this testimony, Lardieri was indicted for perjury. At his trial before a jury he contended that he had made the false statements because he was tired, having not slept for 36 hours in order to prepare for a banquet scheduled for the day of his grand jury appearance. He asserted that he lost his temper, did not know what he was doing, and was not in the right frame of mind.

At the conclusion of the trial, he was convicted of making a false statement before the grand jury in violation of Section 1623. Upon his appeal to this Court Lardieri originally contended that (1) the false statements were not material to the grand jury's investigation; (2) the trial court erred in failing to charge the jury on the elements of willfulness; and (3) the prosecutor made prejudicial remarks in his closing statement to the jury. In an opinion filed May 14, 1974, this Court found no merit in Lardieri's

sion is made, the declaration has not substantially affected the proceeding, or it has

not become manifest that such falsity has been or will be exposed."

contentions, but remanded to the district court for a hearing to determine if the indictment should be dismissed because of the failure of the prosecutor to inform Lardieri of the recantation provisions of Section 1623, inasmuch as the prosecutor had warned him of the punitive provisions of that section.[2]

A petition for rehearing filed by the United States raised the question whether Section 1623 requires the prosecutor to notify a grand jury witness of the recantation provision.

On this rehearing Lardieri contends that the legislative purpose embodied in Section 1623(d) is to encourage witnesses to divulge the truth by permitting them, when they have lied under oath, to correct their false testimony without subjecting themselves to perjury convictions. If subsection (d) is to serve this purpose, Lardieri argues, it is necessary for witnesses to be aware of their right to recant, and therefore for the prosecutor to notify them of such right. Accordingly, Lardieri concludes that this case should be remanded to the district court for a determination whether the indictment should be dismissed for the prosecutor's failure to so notify Lardieri.

b.

▆▆▆ Upon reconsideration we conclude that a reversal of the conviction is not required by section 1623 as a result of the prosecutor's not having given Lardieri further notification of the recantation provision in the statute. Nor do we consider such reversal an appropriate exercise of any supervisory powers over the grand jury which may be vested in this Court.[3]

We first review the statutory language and the legislative history to determine whether the statutory intent requires that such a notice regarding recantation be given to a witness before a grand jury. It is clear that the statute, by its terms, does not expressly require the prosecutor to warn the witness of the recantation provision of section 1623(d). The recantation provision was intended to encourage the witness to correct false testimony promptly, by allowing him to escape prosecution if he recants before the proceeding has been "substantially affected" or before it has "become manifest that such falsity has been or will be exposed."[4]

Lardieri has not shown that the purpose of this provision would be frustrated if the prosecutor were permitted to remind the witness of the penalties for perjury without telling him of the recantation provision as well. No empirical evidence has been presented which demonstrates that a statement regarding penalties by the prosecutor would deter the witness from correcting his testimony. On the contrary, it is reasonable to assume that if Congress had found disclosure of the recantation provision necessary in order to stimulate the correction of false testimony, they would have included a disclosure requirement in the statute.[5]

The recantation provision in section 1623(d) was modeled after Section 210.25 of the New York Penal Law, McKinney's

---

**2.** Lardieri was warned of the punitive provisions of 18 U.S.C. § 1623, relating to perjury before a court or grand jury, and was in fact convicted under that statute. For a discussion whether the government could instead have prosecuted him under § 1621, the general perjury statute, see United States v. Kahn, 472 F.2d 272, 283 (2d Cir. 1973), cert. denied, 411 U.S. 982, 93 S.Ct. 2270, 36 L.Ed.2d 958 (1973).

**3.** The rehearing was not addressed to the contentions originally raised by Lardieri in his appeal to this Court. However, as to those contentions, we reaffirm the conclusion reached in our opinion of May 14, 1974, that they are without merit.

**4.** 2 U.S. Code Cong. & Admin. News, p. 4024 (1970). For purposes of this opinion we have assumed, without deciding, that circumstances had not foreclosed the availability to Lardieri of the recantation defense.

**5.** In this context it should be noted that section 1623(d) is the product of an extensive examination of the functions and efficacy of perjury prosecutions. See S.Rep. No. 91–617, 91st Cong., 1st Sess. 57–59 (1969).

Consol.Laws, c. 40, which codified the ruling of the New York Court of Appeals in People v. Ezaugi, 2 N.Y.2d 439, 161 N.Y.S.2d 75, 141 N.E.2d 580 (1957).[6] *See* 2 U.S. Code Cong. & Admin. News, p. 4024 (1970). It is significant that neither the New York Legislature nor the New York courts have found it necessary or appropriate to impose on the prosecutor an obligation to notify the grand jury witness of the provision for recantation when the prosecutor tells the witness of the penalties for perjury.

Additionally, it was the congressional judgment that the overall purpose of Section 1623, obtaining more truthful responses from witnesses before courts and grand juries, would be best accomplished by facilitating perjury convictions for those who had violated their oaths.[7] In order to remove encumbrances from such convictions, Congress abandoned the two-witness rule, discontinued the requirement that the prosecutor prove the truth of one of two irreconcilable statements under oath, and required only a "knowing" rather than a "willful" state of mind.[8] The Senate Judiciary Committee described the intent of the Section as follows:

> A subpoena can compel the attendance of a witness before a grand jury or at trial. * * * But only the possibility of some sanction such as a perjury prosecution can provide any guarantee that his testimony will be truthful.
>
> Today, however, the possibility of perjury prosecution is not likely, and if it materializes, the likelihood of a conviction is not high. * * *
>
> [Section 1623] creates a new federal false declaration provision that will

not be circumscribed by rigid common law rules of evidence. S.Rep. No. 91–617, 91st Cong., 1st Sess. 57–59 (1969). Congress thus sought to promote more truthful testimony by facilitating perjury prosecutions and convictions.

On the other hand, Congress also provided that a witness who had testified falsely could, under limited circumstances, avoid prosecution. As noted earlier, Lardieri has not demonstrated that a requirement that the prosecutor notify witnesses of the recantation provision would induce more people to recant. However, dismissing perjury indictments where the prosecutor has not given such notice would create a new impediment to successful perjury prosecutions, thereby jeopardizing the deterrent effect Congress specifically sought to establish by rendering perjury convictions easier to obtain. The statutory history, therefore, does not reveal a Congressional intent that prosecutions be dismissed where such warnings are not given.

c.

■ The concept of fairness to the criminally accused is incorporated in the doctrine of due process.[9] However, it has not been asserted, either by the parties or in the dissent, that the prosecutor's conduct here rises to the level of a deprivation of Lardieri's constitutional rights. Rather, in his dissent, Judge Weis contends that we should, under our supervisory powers, extend the notion of "fundamental fairness" to hold that a perjury indictment may be dismissed because the prosecutor did not warn the witness of the recantation provision. There has recently been widespread con-

---

**6.** N. Y. Penal Law § 210.25:

> In any prosecution for perjury, it is an affirmative defense that the defendant retracted his false statement in the course of the proceeding in which it was made before such false statement substantially affected the proceeding and before it became manifest that its falsity was or would be exposed. L.1965, c. 1030, eff. Sept. 1, 1967.

**7.** S. Rep. No. 91–617, 91st Cong., 1st Sess. 57–59 (1967).

**8.** *See* 18 U.S.C. § 1623 (Supp.1974); 2 U.S. Code Cong. & Admin. News, p. 4024 (1970); S. Rep. No. 91–617, 91st Cong., 1st Sess. 57–59, 149–50 (1969).

**9.** "As applied to a criminal trial, denial of due process is the failure to observe that fundamental fairness essential to the very concept of justice." Lisenba v. California, 314 U.S. 219, 236, 62 S.Ct. 280, 290, 86 L.Ed. 166 (1941). *See* Hoffa v. United States, 385 U.S. 293, 310–311, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966); Rochin v. California, 342 U.S. 165, 169, 72 S.Ct. 205, 96 L.Ed. 183 (1952).

troversy whether the grand jury functions as an effective safeguard for individual rights or merely as an instrument manipulated by the prosecutor for his own benefit. Such concerns have resulted in proposals both to strengthen and to abolish the grand jury system, as well as in measures to provide greater protection for witnesses before the grand jury. Adoption of the proposed rule would admittedly furnish an additional safeguard for such witnesses.

In this situation, however, dismissal of the indictment because of the lack of notification to Lardieri of the recantation provision would disturb the balance Congress has advertently established between the competing interests of prosecution and recantation. Congress has utilized in section 1623 two inducements to truthful testimony—prosecution and recantation. It is the business of the legislative branch, with its superior investigative facilities, to determine how these competing inducements may best be reconciled to produce the greatest stimulus to truthful testimony. The congressional judgment on this matter is not to be displaced by the judiciary unless there is no reasonable basis for it. Therefore, even if we were to concede that requiring the proposed notice would to some degree increase the incidence of recantation by those who have testified falsely, it would be improper for us, in the exercise of our supervisory powers, to dismiss prosecutions because of the lack of such advice from the prosecutor, thereby endangering the stimulus provided by the threat of criminal sanctions.

In addition, dismissal of the indictment because Lardieri was not informed of the statute's recantation provisions

would provide greater protection to Lardieri's statutory right than is afforded to his constitutional rights. Thus when a grand jury witness who has committed a crime is asked if he has done so, he has the choice of incriminating himself in that crime, committing perjury, or asserting his right to remain silent. If he has not been warned of his Fifth Amendment right to silence and thinking he must answer, commits perjury, this Court has held that he may be prosecuted for doing so.[10] But, under the rule suggested by Lardieri, if the grand jury witness has not been advised of his statutory opportunity to recant, he may be insulated from prosecution for his perjury. Thus the proposed rule would not permit the witness to waive his statutory right to recant without notice of that right being supplied by the prosecution, although he could simultaneously waive a constitutional right without such notice. It would not appear appropriate to utilize whatever supervisory powers we may have to attain so anomalous a result.

d.

In addition, assuming the existence in this Court of supervisory powers over the conduct of grand juries and assuming the propriety of applying a rule promulgated under those powers to reverse a conviction based on conduct which occurred *prior* to the promulgation of such rule,[11] the facts of this case do not merit upsetting Lardieri's conviction under such supervisory powers, since the prosecutor substantially complied with the proposed rule. Although he did not explain the statutory basis therefor, the

**10.** In United States v. DiMichele, 375 F.2d 959 (3d Cir. 1967), for instance, DiMichele was seen leaving the site of a gambling game when the FBI raised the game. Called before a *grand jury investigating the incident,* he testified, without being warned at the time of his grand jury appearance of his right to consult counsel and to remain silent, that he had not been present at the scene of the game. This Court upheld DiMichele's conviction for perjury. *See* United States v. Winter, 348 F.2d 204 (2d Cir. 1965). *Cf.* United States v.

Knox, 396 U.S. 77, 90 S.Ct. 363, 24 L.Ed.2d 275 (1969). *See also* Glickstein v. United States, 222 U.S. 139, 32 S.Ct. 71, 56 L.Ed. 128 (1911); United States v. Hockenberry, 474 F.2d 247, 259 (3d Cir. 1973).

**11.** *Compare* United States v. Schiavo, 504 F.2d 1 at 7, (3d Cir., 1974), petition for cert. filed sub nom. Ditter v. Phila. Newspapers Inc., 42 [43] U.S.L.W. 3282 (U. S. Nov. 6, 1974), *with Id.* at 12 (concurring opinion); *Id.* at 17 (dissenting opinion).

prosecutor did, in fact, offer Lardieri an opportunity to correct his testimony:

Q. I will tell you what I am going to do. I am going to give you a chance to straighten out your testimony. * * * Is there anything that you have said in here today that you would like to modify or change?

The specific circumstances here, therefore, would not justify dismissing the indictment, thus insulating Lardieri from prosecution for his false testimony.

Accordingly, the judgment of the district court will be affirmed.

WEIS, Circuit Judge (dissenting):

The issue posed in the previous opinion by this panel was a narrow one. In a situation where the United States Attorney volunteered legal information on the punitive portions of the perjury statute to an uncounseled witness, did fundamental fairness require that he also advise the witness of a favorable recantation provision of the act? United States v. Lardieri, 497 F.2d 317 (3d Cir. 1974).

There was no necessity to decide the broader question which has been urged by the government's petition for rehearing and pervades the majority opinion—that is, whether there is a statutory duty to make a disclosure to every grand jury witness under all circumstances. Though an argument might be made to that effect, the thrust of precedent in this Circuit is to the contrary. United States v. DiMichele, 375 F.2d 959 (3d Cir. 1967).[1] Our original opinion went no farther than to say that if the United States Attorney chooses to advise a witness on the applicable law of perjury, the factual circumstances may be such that, in the interest of fairness, the prosecutor should disclose the favorable as well as the unfavorable aspects of the statute.

That opinion was based on the concepts of fundamental fairness and our supervisory authority over grand jury activity. For these propositions we need not look for express statutory direction. Our judicial obligation requires us to assure ourselves that proceedings before bodies over which the courts have control are conducted with evenhanded concern for both sides, not allowing one to gain an unseemly advantage over the other. Fundamental fairness is essential to the effective functioning of the adversary process which is at the heart of the common law system.

As the majority recognizes, there has been much debate in recent years over the desirability of retaining the grand jury as an institution. The charge has been made all too frequently that the grand jury is simply a tool of the prosecutor and, therefore, should be abolished. Not enough attention has been focused on one of the fundamental functions of the grand jury—that is, to protect the citizen from the rigors of an unjustified prosecution for a serious crime by shielding him from arbitrary governmental action. The screening process of the grand jury is a significant constitutional protection which should remain viable and effective. The courts must be alert to prevent its erosion.

There should be no doubt that the courts do possess the authority to supervise grand jury activity. In Levine v. United States, 362 U.S. 610, 617, 80 S.Ct. 1038, 1043, 4 L.Ed.2d 989 (1960), it was said:

"The grand jury is an arm of the court and its *in camera* proceedings constitute 'a judicial inquiry.'"

Earlier, in Cobbledick v. United States, 309 U.S. 323, 327, 60 S.Ct. 540, 542, 84 L.Ed. 783 (1940), the Court wrote:

". . . The Constitution itself makes the grand jury a part of the judicial process. It must initiate prosecution for the most important federal crimes. It does so under general instructions from the court to which it is

---

1. That case held that there is no duty to warn a grand jury witness of his right to invoke the Fifth Amendment. For a criticism of the doctrine and a discussion of grand jury proceedings in general, *see* The Rights of a Witness Before a Grand Jury, 1967 Duke L.J. 97.

attached and to which, from time to time, it reports its findings. The proceeding before a grand jury constitutes 'a judicial inquiry', Hale v. Henkel, 201 U.S. 43, 66, 26 S.Ct. 370, 375, 50 L.Ed. 652, of the most ancient lineage."

In re Schofield, 486 F.2d 85 (3d Cir. 1973), was an assertion of supervisory power and an indication of our continuing concern with the problem of grand jury proceedings. In United States v. Goldstein, 502 F.2d 526 (3d Cir. 1974), we emphasized the importance of the screening role.

The grand jury function is best served by extending fair treatment to those who appear before it. Questioning before that body must often be probing and insistent, but physical compulsion on a witness, for example, could not be sanctioned. And, just as vigorous cross-examination in a trial is permissible, but is always subject to control by the presiding judge, so should interrogation of a witness before a grand jury be subject to supervision of the court. Failure to extend the protection of the court to a witness is as detrimental in one situation as the other. I do not believe, therefore, that it is necessary to find specific statutory direction to reach the result we did in our prior opinion. What is involved is not an assessment of the wording of the statute but, rather, its administration—a function traditionally entrusted to the courts. In this respect, Section 1623 does not differ from other criminal statutes.

It is of some significance that this statute is aimed at false statements made before or ancillary to a court or grand jury. While the law is designed to make it easier to secure convictions, it is balanced by giving a witness the opportunity to clear himself, if need be, by recantation. The purpose is to make Section 1623 a more effective device for obtaining the truth in proceedings before courts and grand juries. It may have been assumed that, in those two forums, reasoned judgments would be utilized to make the most effective use of the combination of compulsion by punishment and inducement by recantation to discover the truth. It bears repeating that it is the discovery of truth, not the successful prosecution of perjury, which is the ultimate objective of this statute. Our original ruling gave no license to lie before a grand jury and would not hinder the prosecution in its quest for truth.

There is no need at this point to answer speculation as to whether the defendant would have recanted or that he understood the prosecutor as having granted him that privilege. These are factual matters which should be decided upon remand after a full development of the pertinent circumstances. The district court, after such a proceeding, would be in a far better position than we to decide those matters.

The discussion of the New York statute and cases decided under it is not really helpful for a determination of the question that is presented here. The circumstances are different, and I am not persuaded that, if confronted with the same situation as we have been here, the New York courts would decide in the same fashion as the majority does.

I believe our prior opinion represented only a small step forward, but its reversal is a large step backward. I dissent.