

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-30-1998

# United States v. Sherman

Precedential or Non-Precedential:

Docket 97-7073

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation
"United States v. Sherman" (1998). *1998 Decisions.* Paper 177.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/177

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed July 30, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-7073

UNITED STATES OF AMERICA,
        Appellant

v.

ROBERT J. SHERMAN

ON APPEAL FROM THE FINAL ORDER OF
THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(Criminal No. 4: CR-96-269)

Argued: August 12, 1997

Before: Alito, Lewis* & McKee, Circuit Judges

(Filed: July 30, 1998)

        Theodore B. Smith, III, Esq. (Argued)
        Office of United States Attorney
        Federal Building
        228 Walnut Street
        P.O. Box 11754
        Harrisburg, PA 17108
        Attorney for Appellant

_____

*Judge Lewis heard argument in this matter, but was unable to clear the opinion due to illness.

            Benjamin S. Waxman, Esq. (Argued)
            Robbins, Tunkey, Ross, Amsel,
             Raben & Waxman
            2250 Southwest Third Avenue
            4th Floor
            Miami, FL 33129
            Attorney for Appellee

OPINION OF THE COURT

McKEE, Circuit Judge.

The government appeals the order of the District Court for the Middle District of Pennsylvania dismissing a five-count indictment against Robert Sherman in which he was charged with committing perjury before a federal grand jury in violation of 18 U.S.C. S 1621. The district court held that the prosecution improperly charged Sherman under that general perjury statute rather than the more specific false declarations statute, 18 U.S.C. S 1623, thereby denying him the ability to assert the recantation defense available under 18 U.S.C. S 1623(d). For the reasons that follow, we will reverse and remand for further proceedings consistent with this opinion.

I. Statement of Facts

On October 23, 1996, Robert J. Sherman was indicted on five counts of perjury under 18 U.S.C. S 1621. The indictment stemmed from Sherman's testimony in the medical malpractice trial of Samuel and Gail Gassert v. Latif Awad, M.D. and Geisinger Medical Center. Sherman- a longtime obstetrician/gynecologist - had testified as the plaintiffs' medical expert in that trial. When cross examined about his qualifications as an expert, Sherman had testified that he was licensed to practice medicine in the District of Columbia, Virginia and Massachusetts and that none of his licenses had ever been revoked, suspended or restricted. App. at 63. He further testified that he had never been subject to any disciplinary proceedings by any hospital or medical society. App. at 62. He did, however, acknowledge

that he had once been named in a medical malpractice case fifteen years earlier, involving a problem with a "D & C",[1] but he described it as "routine." App. at 63. When Sherman provided that testimony, he knew that all of his licenses had been revoked, and defense counsel ultimately elicited this admission from Sherman. Because that testimony is at the heart of this appeal, we will quote the relevant exchange at length:

> Q: At the present time you are licensed to practice medicine in Virginia.
>
> A: Yes.
>
> Q: Over the course of your practice, which has been about how many years now?
>
> A: Thirty years.
>
> Q: Okay, over the course of your practice, how many states have you ever been licensed to practice in?
>
> A: I was licensed in Massachusetts, Virginia, Maryland, and D.C.
>
> Q: And you've continued to keep your license current in Virginia.
>
> A: That's all.
>
> Q: Do you remember at the time of your retirement in 1985, do you remember what states you had licenses in?
>
> A: I don't have that handy at the moment.
>
> Q: Well, were you licensed to practice medicine in Virginia in 1985?
>
> A: Yes. yes.
>
> Q: How about Massachusetts?
>
> A: I moved away from Massachusetts so I didn't bother with that.

---

1. The abbreviation "D & C" stands for "dilation and curettage," the "dilation of the cervix and curettement of the endometrium." Stedman's Medical Dictionary 442, 485 (26th ed. 1995).

. . . .

Q: Did you ever have your privileges at any of those hospitals either revoked, suspended or restricted?

A: No.

. . . .

Q: Did you ever have any of your hospital privileges in Boston or in the Boston area revoked, suspended or restricted?

A: No.

Q: Have you ever been subject to any disciplinary proceedings by any--

  (Objection and objection overruled)

Q: Dr. Sherman, have you ever been subject to any disciplinary proceedings by a hospital or medical society?

A: No.

Q: Have you ever been named as a defendant in a medical malpractice suit?

  (Objection and objection overruled)

A: I had a malpractice case about 15 years ago myself, yes.

Q: Could you tell us what that was about?

A: It was settled somehow or other, but there was a routine case.

Q: Was that an OB/GYN case?

A: Yes.

Q: And it was routine?

A: Well, there was a D & C problem.

Q: You mentioned that over the course of your practice you were licensed in four states that you told us about. Have any of those licenses ever been revoked, suspended or restricted in any fashion?

A: No, I let them--I let them go because I had no intention of going back to active OB.

Q: So you let your license in Massachusetts lapse?

A: Yes.

Q: And you let your license in Maryland lapse?

A: Yes.

Q: And you let your license in the District of Columbia lapse?

A: Yes.

 . . . .

Q: Go back to your licensures, Doctor. Isn't it true that you had your license to practice medicine in the District of Columbia revoked in 1977?

A: Yes, it was. Yes, but--

Q: Isn't it true that you had your license to practice medicine in Massachusetts revoked in 1983?

  (Objection and objection overruled).

A: Yes.

Q: Isn't it true that you had your license to practice medicine in Virginia revoked in 1979?

A: But it was reinstated.

Q: The question to you, Doctor, is isn't' it true that your license to practice medicine in Virginia was revoked in 1979?

A: Yes.

Q: And it was not until 197--1993 that your license was reinstated in Virginia.

A: Yes.

Q: And wasn't you license in Virginia reinstated on a probationary status?

A: Yes.

. . . .

5

Q: And according to the order of reinstatement you were not to engage in the practice of medicine until such time as you successfully passed the special purpose examination.

A: Yes.

Q: Did you pass that examination?

A: I have to take it on March 17th.

Q: Do you have plans to take it?

A: Yes.

Q: But you have not yet complied with that particular requirement.

A: Not yet.

Q: I see. If you have not complied with a particular term or condition of reinstatement, has your license in Virginia in fact been reinstated?

A: Has it been reinstated?

Q: Has it been actually reinstated?

A: It has been reinstated subject to that, yes.

Q: Could you go into the state of Virginia today and treat patients?

A: I don't treat any patients at the--

Q: If you wanted to, could you, with your restricted license, go into Virginia today and treat patients?

A: No.

Q: After your license was revoked in Massachusetts in March of 1983, you requested in 1992 reinstatement, did you not?

A: Yes.

Q: That was denied, wasn't it?

A: Yes.

Q: Didn't you have a license to practice in Maine?

A: Yes.

6

Q: And you made a license renewal to Maine in 1983 which was denied, didn't you?

A: At that time. It is under advisement for renewal at this time.

 . . . .

Q: Doctor you told us that 15 years ago you were subject --you were a defendant in a routine medical malpractice suit, weren't you?

A: Yes.

Q: You know where I'm going, don't you, Doctor?

A: Yes.

Q: Do you remember a patient by the name of Rita McDowell?

A: Yes.

Q: Rita McDowell came into your clinic for an abortion, didn't she?

A: Yes.

Q: She was 16 years of age.

A: Yes.

Q: You performed an incomplete abortion on her.

A: I did not.

Q: Doctor, as a result of the procedure that you performed on Rita McDowell, she died didn't she?

A: Absolutely not.

Q: Rita McDowell did not die?

A: She died at D.C. General Hospital as a result of a CVP line which perforated the lungs, and she died of cardiac arrest on that score.

Q: Doctor, the reason that your license was revoked in D.C. in 1977 was because of the Rita McDowell case, wasn't it?

A: Yes.

> Q: And the reason that your license was revoked in D.C. was because you, as a practice, were performing incomplete septic abortions on your patients.
>
> A: That is your opinion but not mine.

App. at 58-59, 60-67, 69-70.

Sherman was subsequently indicted for perjury under 18 U.S.C. S 1621. Count I of the indictment charged him with testifying that none of his licenses to practice medicine had ever been revoked, suspended or restricted. See app. at 8-9. Count II charged him with testifying that he had allowed his license to practice medicine in Massachusetts to lapse, when in fact it had been revoked. See app. at 10. Count III charged him with testifying that he had only allowed his license to practice medicine in the District of Columbia to lapse. It had also been revoked. See app. at 11. Count IV charged him with testifying that he had never been subject to disciplinary proceedings by a medical society, when in fact he had been subjected to such proceedings in the District of Columbia, the Commonwealth of Massachusetts and the Commonwealth of Virginia. See app. at 12. Count V charged him with testifying that 15 years prior he had been named in a routine medical malpractice case involving a D & C, which was ultimately settled, "when in fact . . . the Board of Medicine of the District of Columbia had found that the defendant performed an incomplete abortion on a 16-year old girl in order to increase his fees by making later surgical procedures necessary, resulting in the patient's death . . . [and] the revocation of defendant's license to practice medicine . . . and . . . criminal prosecution." App. at 13-14.

Sherman moved to dismiss the indictment, arguing that the government had denied him the due process of law by depriving him of the defense of recantation that is available under 18 U.S.C. S 1623, but not under 18 U.S.C. S1621. See 18 U.S.C. S 1623(d). The district court agreed and dismissed the indictment. The court ruled that the government had unfairly denied Sherman a defense to the criminal charges, and this appeal followed. Our standard of review is plenary. King v. Ahrens, 16 F.3d 265, 270 (8th Cir. 1994). We have jurisdiction pursuant to 28 U.S.C. S 1291. Our standard of review is plenary.

8

II. Discussion

A. The Distinctions Between the Two Statutes

The sole issue before us is whether the district court erred in dismissing the five-count indictment against Sherman. The court held that the government lacked the discretion to charge Sherman under the general perjury statute, 18 U.S.C. S 1621, rather than the false swearing statute, 18 U.S.C. S 1623, as the latter statute more specifically applied to his conduct, and not prosecuting under that statute improperly deprived Sherman of the defense of recantation which is available under 18 U.S.C. S 1623(d), but which does not apply to 18 U.S.C. S 1621.

18 U.S.C. S 1621 states in relevant part as follows:

> Whoever--
>
> (1) having taken an oath before a competent tribunal . . . that any written testimony, declaration, deposition, or certificate by him . . . is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or
>
> (2) in any declaration, certificate, verification, or statement under penalty of perjury willfully subscribes as true any material matter which he does not believe to be true;
>
> is guilty of perjury and shall . . . be fined under this title or imprisoned not more than 5 years or both.

(emphasis added).

18 U.S.C. S 1623 was enacted after S 1621 as a part of the Organized Crime Control Act of 1970. It provides, in pertinent part, as follows:

> Whoever under oath . . . in any proceeding before or ancillary to any court or grand jury of the United States, knowingly makes any false material declaration . . . shall be fined under this title or imprisoned not more than 5 years or both.

(emphasis added). However, the statute allows for the defense of recantation in limited situations. Section 1623(d) states:

9

Where, in the same continuous court or grand jury proceeding in which a declaration is made, the person making the declaration admits such declaration to be false, such admission shall bar prosecution under this section if, at the time the admission is made, the declaration has not substantially affected the proceeding, or it has not become manifest that such falsity has been or will be exposed.

Subsection (e) of S 1623 adds that:

[p]roof beyond a reasonable doubt under this section is sufficient for conviction. It shall not be necessary that such proof be made by any particular number of witnesses or by documentary or other type of evidence.

18 U.S.C. S 1623(e).

We have previously noted the distinctions between the two statutes: 1) S 1623 does not require that the prosecution employ the "two-witness rule" for proving perjury; 2) S 1623 has a reduced mens rea requiring only that one "knowingly" commit perjury rather than "willfully," as is required under S 1621; and 3) S 1623 is restricted to testimony before grand juries and courts and is therefore more limited in reach than S 1621. See United States v. Gross, 511 F.2d 910, 914-15 (3d Cir. 1975).

In United States v. Lardieri, 506 F.2d 319 (3d Cir. 1974), we examined the congressional intent behind these overlapping statutes. We stated:

[I]t was the congressional judgment that the overall purpose of Section 1623, obtaining more truthful responses from witnesses before courts and grand juries, would be best accomplished by facilitating perjury convictions for those who had violated their oaths. In order to remove encumbrances from such convictions, Congress abandoned the two-witness rule, discontinued the requirement that the prosecutor prove the truth of one of two irreconcilable statements under oath, and required only a `knowing' rather than a `willful' state of mind. The Senate Judiciary Committee described the intent of the Section as follows:

10

> A subpoena can compel the attendance of a witness
> . . . But only the possibility of some sanction such as
> a perjury prosecution can provide any guarantee that
> his testimony will be truthful.
>
> Today, however, the possibility of perjury prosecution
> is not likely, and if it materializes, the likelihood of a
> conviction is not high. * * *
>
> (Section 1623) creates a new federal false declaration
> provision that will not be circumscribed by rigid
> common law rules of evidence.

506 F.2d at 322. (citing S. Rep. No. 91–617, at 57–59
(1969)).

Thus, Congress changed the law in order to facilitate
perjury prosecutions. It also sought to enhance the truth-
seeking process by allowing perjurers to recant perjured
testimony and thereby escape conviction.

> The congressional effort to improve truth telling in
> judicial proceedings was thus twofold. Congress
> magnified the deterrent role of the criminal law by
> easing the Government's path to perjury convictions
> and the emphasis here was plainly on pressure
> calculated to induce the witness to speak the truth at
> all times. Congress also extended absolution to
> perjurers who recant under prescribed conditions,
> admittedly an endeavor to secure truth through
> correction of previously false testimony. Each of these
> techniques has its own virtue, and it was, of course,
> the prerogative of Congress to put them to use; but it
> is evident that in some degree they unavoidably must
> work at cross-purposes. Recantation, for all its value in
> ultimately unveiling the truth, may well prove to be a
> disincentive to veracity in the first instance; to the
> extent that a perjurer can sidestep prosecution simply
> by recanting, he is hardly the more prompted to tell the
> truth in the beginning. By the same token, the
> deterrent effect of any statute punishing perjury is
> weakened in the same measure that recantation holds
> out the promise of possible escape. And indisputably,
> maximum deterrence of perjury is necessarily
> inconsistent with maximum range for recantation.

11

United States v. Moore, 613 F.2d 1029, 1041 (D.C. Cir. 1979) (footnote omitted).

B. Prosecutorial Discretion

When Sherman testified about his background, he violated 18 U.S.C. S 1621 as well as 18 U.S.C.S 1623. With certain exceptions, when conduct runs afoul of more than one prohibition of the criminal law, prosecutors have discretion to choose under which statute to prosecute. United States v. Batchelder, 442 U.S. 114, 125 (1979). "[W]hen an act violates more than one criminal statute, the government may prosecute under either statute so long as it does not discriminate against any class of defendants." Id. at 123-24 (1979).

In Batchelder, a previously convicted felon was convicted of receiving a firearm that had traveled in interstate commerce, in violation of 18 U.S.C. S 922(h). 2 The trial court sentenced him to five years' imprisonment under 18 U.S.C. S 924(a).3 The Court of Appeals for the Seventh Circuit affirmed the conviction but remanded for resentencing. The court noted that the substantive elements of S 922(h) are similar to those of 18 U.S.C. App. S 1202(a),4 a statute which allows for a maximum sentence

_____

2. 18 U.S.C. S 922(h) provides, in pertinent part:

     It shall be unlawful for any person--

     (1) who is under indictment for, or who has been convicted in any
     court of, a crime punishable by imprisonment for a term exceeding
     one year;

     to receive any firearm or ammunition which has been shipped or
     transported in interstate or foreign commerce.

3. 18 U.S.C. S 924(a) provides, in pertinent part:

     Whoever violates any provision of this chapter . . . shall be fined
not
     more than $5,000, or imprisoned not more than five years, or both,
     and shall become eligible for parole as the Board of Parole shall
     determine.

4. 18 U.S.C. App. S 1202(a) provides, in pertinent part:

     Any person who--

of two years, and that the sentencing court was thus restricted to a maximum sentence of two years.5

The Supreme Court reversed noting that regardless of the apparent overlap between S 922(h) and S 1202(a), "nothing in the language, structure or legislative history of the Omnibus Act," id. at 118, suggests that a defendant convicted under S 922(h) may be imprisoned no more than two years. The Court further stated that "[a]s we read the Act, each substantive statute, in conjunction with its own sentencing provision, operates independently of the other." Id. Similarly, S 1621 and S 1623 are separate statutes that operate independently of each other, and the government can normally elect upon which of those two statutes to base its prosecution. "[A] defendant has no constitutional right to elect which of two applicable federal statutes shall be the basis of his indictment and prosecution." Id. United States v. Ciampaglia, 628 F.2d 632, 639 (1st Cir. 1980).

However, notwithstanding the breadth of prosecutorial discretion, a prosecutor's charging decision cannot be "motivated solely by a desire to [achieve] a tactical advantage by impairing the ability of a defendant to mount an effective defense, [in such a case] a due process violation might be shown." Id. Here, Sherman argues that the prosecution did just that. The district court accepted Sherman's argument that he was denied due process of the law because the prosecutor deliberately secured a tactical

_____

(1) has been convicted by a court of the United States or of a State
    or any political subdivision thereof of a felony . . .

and who receives, possesses, or transports in commerce or affecting
    commerce, after the date of enactment of this Act, any firearm shall
    be fined not more than $10,000 or imprisoned for not more than
    two years, or both.

5. The court based its decision upon three separate grounds. It reasoned that the ambiguity created by the two overlapping statutes had to be resolved in favor of the defendant, the shorter sentence was contained in the statute that was later in time and therefore the earlier statute had been repealed by implication, and the longer sentence authorized by S 922 was void for vagueness when considered in conjunction with the shorter sentence authorized under S 1202(a).

13

advantage in denying him a defense that he was entitled to assert by indicting him under S 1621 rather than S 1623.6 In dismissing the indictment, the district court stated: "[w]e are of the view that allowing a prosecutor unbridled discretion to charge a defendant under section 1621 in all cases where a defendant might assert a recantation defense would eliminate the defense and is inappropriate." D.Ct. Op. at 3 (citing United States v. Kahn, 472 F.2d 272 (2d Cir. 1973). Accordingly, we must examine the defense of recantation and determine if Sherman's prosecution under 18 U.S.C. S 1621 improperly denied him a defense that he was entitled to assert.

1. Recantation Under 18 U.S.C. S 1623(d)

Under 18 U.S.C. S 1623(d) the defense of recantation is available: 1) "if, at the time the admission is made, the declaration has not substantially affected the proceeding"; or 2) "it has not become manifest that such falsity has been or will be exposed." Here, the district court concluded that Sherman could have asserted the defense as his perjury had not substantially affected the proceeding when he recanted. Understandably, the court concluded that it was irrelevant that the perjury had been exposed prior to the recantation because the statute was drafted in the disjunctive so Sherman needed only to satisfy one of the two conditions, not both of them. The court held that the government's reliance upon 18 U.S.C. S 1621 deprived Sherman of the defense Congress wrote into S 1623 and that Sherman's right to due process of the law had therefore been violated.

The government contends that the district court erred in reading S 1623(d) in the disjunctive rather than the conjunctive, because both prongs must be met before a recantation defense is available. Since Sherman's perjury was exposed prior to his attempted recantation, the

_____

6. Sherman also argues that the decision to indict him under 18 U.S.C. S 1621 denied him the equal protection of the law. The district court did not base its dismissal on Equal Protection grounds, and Sherman's resort to the Equal Protection Clause now is meritless, and we reject it without discussion.

14

government argues that his right to due process of the law could not have been denied because he was not entitled to the recantation defense. Thus, our inquiry is focused upon whether Sherman was entitled to the defense of recantation under 18 U.S.C. S 1623(d).

Statutory interpretation usually begins, and often ends, with the language of the statute. Adams Fruit Co., Inc. v. Barrett, 494 U.S. 638, 642 (1990). "Where . .. the statute's language is plain, `the sole function of the court is to enforce it according to its terms.' " We look to the text of a statute to determine congressional intent, and look to legislative history only if the text is ambiguous. Id. Plain meaning is conclusive, "except in the `rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.' " New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc., 101 F.3d 1492, 1498 (3d Cir. 1996).

18 U.S.C. S 1623(d) is deceptive in its apparent clarity. It says "or" and Sherman argues that Congress intended the statute to mean exactly that. However, reading the statute as Sherman argues we must results in a statute that is both inconsistent with, and frustrating to, Congress' twofold intent in enacting the legislation. If Sherman is correct, one could commit perjury with impunity. A witness could violate his or her oath in the comfort of knowing that no perjury prosecution was possible so long as he or she recanted as soon as it appeared the perjury would be disclosed. A recantation at that point, under Sherman's interpretation, would shield the conduct even if the judicial proceedings had been substantially affected by the false testimony. Similarly, a witness could escape prosecution even after the false nature of it had been disclosed and hope to successfully argue that the proceedings had not been substantially effected because there had been a recantation.

In Lardieri we examined the legislative history of S 1623 to determine legislative intent, and we are guided by that analysis. See also Batchelder, 442 U.S. at 120 ("That Congress intended to enact two independent gun control statutes . . . is confirmed by the legislative history of the Omnibus Act."). We do not believe that Congress intended

15

to "improve truth telling in judicial proceedings," by incorporating a provision into the perjury statute that would be tantamount to granting immunity from prosecution in many, if not all, instances. In Lardieri, the defendant argued that the prosecutor who warned him against perjuring himself had a duty to also advise him of the recantation defense under S 1623(d), and that he could not be prosecuted for perjury absent such a warning. He asserted that a contrary interpretation of 18 U.S.C. S 1623(d) would frustrate the "legislative purpose embodied in [the statute] to encourage witnesses to divulge the truth by permitting them . . . to correct their false testimony without . . . perjury convictions." 506 F.2d at 322. In reviewing the legislative history we noted that "[t]he recantation provision in section 1623(d) was modeled after Section 210.25 of the New York Penal Law which codified the ruling of the New York Court of Appeals in People v. Ezaugi," id. at 322–23, (citations omitted) and concluded that "neither the New York Legislature nor the New York courts have found it necessary or appropriate to impose [a duty to warn] on the prosecutor." Id. at 323.

Similarly, we note that, despite the disjunctive phrasing in S 1623(d), the New York statute it was based upon is drafted in the conjunctive. Section 210.25 of the New York Penal Law states:

> In any prosecution for perjury, it is an affirmative defense that the defendant retracted his false statement in the course of the proceeding in which it was made before such false statement substantially affected the proceeding and before it became manifest that its falsity was or would be exposed.

N.Y. Penal Code S 210.25 (McKinney 1965) (emphasis added). See also Lardieri, 506 F.2d at 323 n. 6. Moreover, the wording of the New York statute is consistent with the court decision upon which it is based. In People v. Ezaugi, 2 N.Y. 2d 439 (1957), Ezaugi, a police officer, was convicted of perjury for giving false testimony to a grand jury investigating police corruption. In the grand jury, Ezaugi had been asked about a conversation he had with a drug dealer. Ezaugi had been extorting protection payoffs from the drug dealer, but unbeknownst to Ezaugi, the dealer had

16

gone to authorities and was cooperating with a police internal affairs investigation when Ezaugi spoke to him.

In the grand jury, Ezaugi admitted to having a discussion with the drug dealer but lied about its content. The conversation was surreptitiously recorded, and Ezaugi later became concerned that the prosecutor who questioned him before the grand jury may have known the true content of the conversation. Ezaugi then requested another opportunity to testify before the grand jury. When he testified the second time he admitted that his prior testimony had been false, but explained that he had been upset, and had not been certain that he was authorized to divulge confidential police information. The indictment followed, and Ezaugi was convicted of having perjured himself during his first appearance. On appeal he argued that, under New York case law, "even if it be assumed that the answers are intentionally false and misleading, the defect is cured when the witness changes his statement and purports to tell the truth." Id. at 442. See People v. Gillette, 111 N.Y.S. 133 (1908) and King v. Carr, 1 Sid. 418 (1669). The Court of Appeals rejected that argument:

> However useful that rule may be as an aid in arriving at testimonial truth, it does not follow that it should be made a rule of universal application, for to do so might just as surely encourage perjury, especially in those situations where a witness does not recant until he becomes convinced that his perjury no longer deceives. It is fundamental that a witness may not disregard his oath to tell the truth in the first instance. Accordingly, we hold that recantation as a defense is primarily designed to correct knowingly false testimony only if and when it is done promptly before the body conducting the inquiry has been deceived or misled to the harm and prejudice of its investigation, and when no reasonable likelihood exists that the witness has learned that his perjury is known or may become known to the authorities.

Id. (emphasis added). Thus, neither the text of the statute upon which S 1623(d) was modeled, nor the court decision that is codified by that statue support Sherman's position. They both require recantation before the perjury prejudices

17

the investigation and before there is a reasonable likelihood
that the perjury will be discovered.

> Inexplicably, though the New York statute professedly
> was the paragon of Section 1623(d)'s specification on
> recantation, the latter as drafted set forth the
> preconditions in the disjunctive. The fact is, however,
> that the congressional treatment of the recantation
> provision never deviated from the understanding that
> the New York version had been basically incorporated.
> Indeed, during hearings on the legislation proposed,
> the Department of Justice included in its comments to
> the House subcommittee an interpretation expressly
> and precisely paralleling New York's conjunctive
> articulation of the preconditions.7 At no time did
> anyone dispute an intended identity between the two
> statutes in this regard, or reflect a conscious
> comprehension of a significant difference. Instead, the
> matter received very little attention, and references on
> the point invariably passing were woefully inconclusive.

United States v. Moore, 613 F.2d at 1042. (some footnotes
omitted). We agree.

Although there is not a wealth of legislative history
available for S 1623, that which does exist reveals that
Congress' intent was to encourage truthful testimony by
witnesses appearing before federal courts and grand juries
by facilitating perjury prosecutions and providing narrowed
opportunity for recantation.8 Thus, the Department of

_____

7. The Department's interpretation was:

> If a witness recants in the course of the same continuous court or
> grand jury proceeding, a prosecution for false statements will be
> barred, provided that the repudiation is made before it has
> substantially affected the proceeding, and before it is evident
that
> the witness' false testimony will be exposed. This provides an
> incentive to the witness who testifies falsely upon his first
> appearance to retract his testimony and avoid prosecution by
> thereafter testifying truthfully.

Organized Crime Control: Hearings on S. 30 and Related Proposals
Before Subcomm. No. 5 on the House Comm. of the Judiciary, 91st
Cong. 164 (1970).

8. S. Rep. No. 91-617, at 33, 57-59, 109-11, 149-150; reprinted in 1970
U.S.C.C.A.N. 4024; H.R. Rep. No. 91-1549, at 33, 47-48 (1970); Lardieri,
497 F.2d at 321.

Justice stated that S 1623 is "an additional felony provision" designed to "supplement, not supplant existing perjury provisions." Senate Report 617.

Here, the district court held that United States v. Smith, 35 F.3d 344 (8th Cir. 1994), and United States v. Kahn, 472 F.2d 272 (2nd Cir. 1973) support reading S 1623(d) in the disjunctive as suggested by the language of the statute. See D. Ct. Op. at 3-4. ("We will follow the holding of the United States Court of Appeals for the Eighth Circuit in Smith and apply the plain language of section 1623(d)."). However, we are not persuaded by the analysis in either Smith or Kahn.

2. United States v. Smith and United States v. Kahn

In Smith, the court stated:

> Because the wording of S 1623(d) is plain, simple, and straightforward, the words must be accorded their normal meanings. The ordinary usage of the word "or" is disjunctive, indicating an alternative. Construing the word `or' to mean "and" is conjunctive, and is clearly in contravention of its ordinary usage. Thus, we find the plain language of S 1623(d) controlling and accord the word `or' its ordinary, disjunctive meaning.

35 F.3d at 346 (citing United States v. Jones, 811 F.2d 444, 447 (8th Cir.1987)) (internal quotation marks omitted). The court concluded that reading the statute in the disjunctive was consistent with the intent of Congress, because it both provided a strong incentive to provide truthful testimony in the first instance and to correct false testimony after it is given.

> Reading the two conditions in the alternative, as the word "or" demands, the statute creates an incentive for witnesses to correct false testimony early in the proceeding. Arguably, construing the word "or" to mean "and" creates a statutory scheme providing a stronger incentive for witnesses to testify truthfully at the outset; however, we defer to Congress's chosen scheme as manifested by its language which balances encouragement of truthful testimony and penalties for perjury.

19

Id. However, as noted above, reading the statute in the disjunctive actually provides an incentive for perjury, and even the Smith court recognized that such a result would be contrary to the intent of the statute. Moreover, the court in Smith did not address the obvious contradiction between the disjunctive in S 1623(d) and the conjunctive in the law it is based upon.

> Had so drastic a departure from the New York statute as a switch from combination to alternative satisfaction of its carefully developed preconditions been really intended, we believe Congress would have said so . .. . Had Congress, after making crystal clear its purpose to promote truth telling to the hilt, intended the almost wide-open door to prevarication that disjunctive construction of the statutory preconditions would furnish, it hardly would have failed to elucidate its logic.

Moore, at 1042-43.

In Kahn, the defendant also challenged his conviction under 18 U.S.C. S 1621, and asserted several reasons why he should have been charged under S 1623 instead. The government's position there was similar to the position adopted here, and included an assertion that the prosecution had absolute discretion to decide upon which statute to base a conviction. The court rejected that argument out of hand.

> While perhaps Congress constitutionally could have placed such wide discretion in the prosecutor, wefind no clear intention that it meant to do so here. And, we find not a little disturbing the prospect of the government employing S 1621 whenever a recantation exists, and S 1623 when one does not, simply to place perjury defendants in the most disadvantageous trial position.

472 F.2d at 282. However, the court did not rule on that argument because the defendant had been afforded all of the protection that he would have been entitled to under S 1623. Id. at 283. ("we need not reach the merits of the government's position [here] . . . assuming arguendo that the indictment named the wrong statute, there was no

prejudice to Kahn. The substantive elements . . . are the same under either statute, and the trial court applied the `two-witness' rule).9 Since the court did not address the merits, the holding in Kahn is not as supportive of Sherman's position as the district court assumed. Moreover, to the extent that the analysis in Kahn does support Sherman's position, we are not persuaded by it.10

Rather, we agree with the analysis in United States v. Moore. The discussion there is perhaps the most comprehensive analysis of 18 U.S.C. S 1623(d) that has been conducted by a circuit court of appeals. There, the court stated that despite the commonly understood meaning of "or", the legislative history ofS 1623 required that courts imbue the word "or" with the meaning of "and". Moore, 613 F.2d at 1040. We agree.

Only if both statutory conditions exist at the time of recantation will Congress' dual purpose of deterring perjury through more effective prosecutions and encouraging truthful testimony be furthered. Congress clearly did not intend to remove the twin impediments of the "two-witness" rule and the burden of proving which of two conflicting statements was actually false only to replace them with a "get out of jail free card." Accordingly, we conclude that Congress intended to limit the defense of recantation in 18 U.S.C. S 1623(d) only to those instances where the perjurer recants before the "declaration has not substantially affected the proceeding," and "it has not become manifest that such falsity has been or will be exposed."

Here, that did not happen. Sherman's revelation came too late to allow him to rely upon it to defend himself from

_____

9. The court does not focus on whether the trial court charged the jury as to the mens rea requirement of S 1623 as opposed to the higher requirement in the statute under which the defendant was convicted.

10. We note that, since we conclude that Sherman was not entitled to the defense of recantation under 18 U.S.C. S1623(d), we need not address whether the Constitution would preclude the prosecutor from prosecuting under S 1621 and thereby depriving Sherman of a defense to which he would have otherwise been entitled. It may well be, as suggested in Kahn, that such a decision would arouse due process concerns.

21

prosecution under the general perjury statute. Accordingly, we must reject his argument that the prosecutor's decision to charge him under 18 U.S.C. S 1621 rather than 18 U.S.C. S 1623 deprived him of a defense in violation of his right to due process of the law.

The reasoning in Moore, which we today adopt, is consistent with the decisions of the vast majority of courts of appeals that have addressed the overlap of these two statutes. In United States v. Scivola, 766 F.2d 37, 45 (1st Cir. 1985), the court stated that

> [section 1623] lists two temporal requirements that must be satisfied in order for a recanting witness to avoid prosecution for perjury: 1) the recantation must be made before the prior false testimony has substantially affected the relevant proceeding, and 2) it must be made before it has become manifest that the falsity of the prior testimony has been or will be exposed.

Similarly, in United States v. Fornaro, 894 F.2d 508, 510 (2d Cir. 1990), the Court of Appeals for the Second Circuit stated that "[w]e agree . . . that the more plausible interpretation of the section makes fulfillment of both conditions necessary for recantation to bar prosecution for perjury." Finally, in United States v. Scrimgeour, 636 F.2d 1019, 1024 (5th Cir. 1981), the court opined that "[t]he conjunctive reading of Section 1623(d) comports with accepted principles of statutory construction and is supported by the underlying congressional intent."

Here, Sherman answered "yes" when defense counsel began his impeachment of Sherman by asking: "[y]ou know where I am going with this don't you?" It is difficult to imagine a scenario that more clearly demonstrates why Congress could not have intended S 1623(d) to be read in the disjunctive.

> If the two preconditions which Section 1623(d) specifies are alternative in nature, a perjurer can avoid prosecution by the simple expedient of recanting before his perjury adversely affects the proceeding, even after his misdeed has been laid bare; if, however, both preconditions must exist before recantation aborts the

22

          prosecution, there is much less tug-of-war within
          Congress' dual methodology for veracity-promotion.

Moore, 613 F.2d at 1041.

In interpreting 18 U.S.C. S 1623(d), it may appear that
there is tension between the language of the statute and
the canons of statutory construction. However, "[t]he strict-
construction rule governing interpretation of criminal
statute is not [ ] to be woodenly applied." Strict construction
"cannot provide a substitute for common sense, precedent
and legislative history . . ." Moore, 613 F.2d at 1044
(quoting United States v. Standard Oil Co., 384 U.S. 224,
225 (1966)). Our prior decision in Lardieri affords us the
benefit of the legislative history, and that history along with
the judicial and statutory antecedents of 18 U.S.C.
S 1623(d) leave no doubt as to the congressional intent in
enacting that statute.

C. Repeal

The district court also accepted Sherman's argument that
since 18 U.S.C. S 1623 was enacted after 18 U.S.C. S 1621,
Congress intended to repeal S 1621. However,"repeals by
implication are not favored . . . implicit repeal requires a
`clear and manifest' indication of congressional intent."
United States v. Curran, 20 F.3d 560, 565 (3d Cir. 1994).
See also Morton v. Mancari, 417 U.S. 535 (1974).

          The courts are not at liberty to pick and choose among
          congressional enactments, and when two statutes are
          capable of co-existence, it is the duty of the courts,
          absent a clearly expressed congressional intention to
          the contrary, to regard each as effective. When there
          are two acts upon the same subject, the rule is to give
          effect to both if possible . . . . The intention of the
          legislature to repeal must be clear and manifest.

Id. at 551.11 Similarly, in Batchelder, the Court noted that
_____

11. In deciding whether the Equal Employment Opportunity Act of 1972,
42 U.S.C. S 2000e, et seq, repealed the Indian Reorganization Act of
1934, 25 U.S.C. S 472, the Court recognized that "the Indian preference
statute is a specific provision applying to a very specific situation."
Id. at

a statute cannot "be interpreted as implicitly repealing [another statute] whenever a defendant's conduct might violate both Titles." Batchelder, 442 U.S. at 122. The Court stated that "the legislative intent to repeal must be manifest in the `positive repugnancy' between the provisions." Id. (quoting United States v. Borden Co., 308 U.S. 188, 199 (1939)). Here, no such repugnancy exists. Accordingly, the district court erred when it decided that S 1623 impliedly repealed S 1621.

D. The Greater Specificity of S 1623
    Does Not Control

The district court also concluded that S 1623 was the appropriate statute to rely upon because it is more specific than S 1621. See D.Ct. Op. at 3. The Court's rejection of this position in Batchelder, however, applies with equal force to Sherman's argument here. See supra p.25. Absent congressional intent to the contrary, or a violation of the right to due process of the law, a prosecutor "may chose between either of two statutes so long as it does not discriminate. The only exception arises where Congress clearly intended that one statute supplant another; the fact that one statute is more specific than the other is not sufficient." United States v. Hopkins, 916 F.2d 207, 218 (5th Cir. 1990) (citing United States v. Zabel, 702 F.2d 704, 707-08 (8th Cir. 1983)). See also Curran, 20 F.3d at 565.

In concluding, we note that neither the district court nor the defendant focus upon the rule of lenity, we note that doctrine would not alter our conclusion. See Dunn v. United States, 442 U.S. 100, (1979). That doctrine would require us to interpret an ambiguity in a criminal statute in favor of a defendant. However, we conclude that the

_____

550. Conversely, the Equal Employment Opportunity Act, the Court noted, was "of general application," id. , and "[w]here there is no clear intention otherwise, a specific statute will not be controlled or nullified
by a general one, regardless of the priority of enactment." Id. at 550-51. We do not think that this determination has any bearing on the case at bar. The Court merely states that the one statute is not privileged over the other, where there is no congressional language to the contrary.

24

congressional intent is clear and the rule therefore has no application. See Batchelder, 442 U.S. at 120. "The doctrine that ambiguities in criminal statutes must be resolved in favor of lenity is not applicable here since there is no ambiguity to resolve."

III. Conclusion

For the foregoing reasons, we will reverse the order of the district court dismissing the government's indictment against Sherman and remand for proceedings consistent with this opinion.12

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

_____

12. Judge Alito concurs in this decision because he does not believe that the subsequent enactment of 18 U.S.C. S 1623 in any way affected 18 U.S.C. S 1621, and because he does not believe that the Constitution or any other rule of federal law requires that charges be brought under S 1623, rather than S 1621, in those cases in which alleged criminal conduct falls within the purview of both statutes. See United States v. Batchelder, 442 U.S. 114, 125 (1979).

25