**UNITED STATES of America,**
**Appellee,**

v.

**Herman Eugene LARDIERI, Appellant.**

**No. 73-1750.**

United States Court of Appeals,
Third Circuit.

Submitted Jan. 9, 1974.

Decided May 14, 1974.

**318**

Richard L. Thornburgh, U. S. Atty., Carl L. LoPresti, Michael P. Lesniak, Special Attys., U. S. Dept. of Justice, Pittsburgh, Pa., for appellee.

Louis J. Grippo, Pittsburgh, Pa., for appellant.

Before ADAMS, HUNTER and WEIS, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

The issues raised by the appellant in this criminal appeal are not sufficient to require reversal, but a point not presented by the parties give us some concern.

The defendant, Herman Lardieri, was convicted of a violation of 18 U.S.C. § 1623 (1970) for giving false testimony before a grand jury. While he was originally indicted on three counts, the petit jury found him guilty on only one charge—that of denying that he signed certain checks.

▮ The grand jury was investigating possible income tax violations by one Sorrentino who had a financial interest in a small restaurant in Altoona, Pennsylvania. Apparently, Sorrentino lived in New York and since he spent little time in Altoona, made arrangements for Lardieri to look after the restaurant business there. The extent to which the defendant participated in the enterprise is a matter of dispute, but he was authorized to write checks on the restaurant account to meet payroll expenses.[1]

While being questioned before the grand jury by the government attorney, the defendant admitted that he had "made out" checks for payroll purposes for Sorrentino's restaurant but denied several times that he had signed them. He professed not to remember whose signatures were on the checks and claimed to have little knowledge of Sorrentino's activities. The interrogation became heated with both the attorney and the witness shouting at each other. When Lardieri complained that he had been told he would be there for only an hour, the prosecutor retorted, "I will keep you here all day."[2]

At one point the prosecutor asked if the defendant knew what perjury was, and Lardieri responded, "You have to tell the truth and if you don't tell the

1. Sorrentino's relationship with Lardieri prompted the Internal Revenue Service to interview him in June, 1971. During that interview, Lardieri stated that he had signed some of the restaurant's checks.

2. In re Schofield, 486 F.2d 85 (3d Cir. 1973), notes that the courts do have supervisory powers over grand juries, and the decision in that case is an indication of our continuing interest in this field. We take this occasion to express our approval of the practice of transcribing the testimony of witnesses before the grand jury which was followed in this case but note that one off-the-record discussion was not recorded.

While we do not think it was of any significance in this case, we would recommend that in the future all such colloquies should be transcribed. A number of district courts by local rule require recordation of all grand jury testimony. See United States v. Battisti, 486 F.2d 961 (6th Cir. 1973) ; United States v. Arradondo, 483 F.2d 980, 984, n. 4 (8th Cir. 1973) ; and United States v. King, 478 F.2d 494 (9th Cir. 1973), cert. denied, 414 U.S. 846, 94 S.Ct. 111, 38 L.Ed.2d 93. See Wright, Federal Practice and Procedure : Criminal § 103 ; Knudsen, Pretrial Disclosure of Federal Grand Jury Testimony, 60 F.R.D. 237 (1973).

truth, you wind up in jail." To this the government attorney added, "And there is a $10,000 fine as well." [3]

Later, in referring to a statement which Lardieri had given to the Internal Revenue agents a year previously, the prosecutor stated, "See, we have records of what you said." Lardieri acknowledged that, and the attorney continued, "You know that is basis for perjury, you know that?"

At another point, the defendant was told that he had not been truthful, and the prosecutor said, "I will tell you what I am going to do. I am going to give you a chance to straighten out your testimony . . . Is there anything that you have said in here today that you would like to modify or change?" To this the defendant replied, "No, just put down what I said. Why don't you ask me the same question you asked me a little while ago in front of these people or don't you remember? You asked me if I always work for nothing."

At the trial defendant admitted, as he had years earlier in the statement to the IRS, that he in fact had signed the checks. He contended that he had made the false statements before the grand jury because he was tired after not having slept for 36 hours, lost his temper, did not know what he was doing, and was not in the right frame of mind.

The defendant contends that the trial court erred in finding that the statements were material and in failing to charge on the elements of willfulness. He also points to allegedly prejudicial remarks in the government's closing argument as a third ground for reversal. After consideration of these contentions, we conclude that they do not constitute grounds for reversal.[4]

Lardieri concedes that his statement regarding his signature on checks for the restaurant was false but argues that it was immaterial because it did not hinder the grand jury's investigation into Sorrentino's tax liability. 18 U.S.C. § 1623 provides that a sworn witness who "knowingly makes any false material statement" before a court or grand jury can be fined no more than $10,000 and/or imprisoned for no more than five years.

The element of materiality is also a requirement of the general perjury statute, 18 U.S.C. § 1621. It is well established that a perjurious statement is material under that section if it has a tendency to influence, impede, or hamper the grand jury from pursuing its investigation. United States v. Cohn, 452 F.2d 881 (2d Cir. 1971), cert. denied, 405 U.S. 975, 92 S.Ct. 1196, 31 L.Ed.2d 249 (1972), and United States v. Stone, 429 F.2d 138 (2d Cir. 1970). The test for materiality is the same under both sections 1621 and 1623. United States v. Koonce, 485 F.2d 374, 380 (8th Cir. 1973)[5] and United States v. Ceccerelli, 350 F.Supp. 475, 477 (W.D.Pa.1972).

The purpose of a grand jury's investigation is to uncover facts which will support formal charges against an individual. Hence, leads to additional facts may be material even though they do not directly reflect on the ultimate issue being investigated. Because the defendant's grand jury investigation was not directly significant in terms of Sorrentino's tax liability, Lardieri urges that his false statements were immaterial and thus not within the purview of §

3. This comment makes it clear that the prosecutor was referring to 18 U.S.C. § 1623—"False declarations before grand jury or Court"—which calls for a maximum fine of $10,000, rather than the general perjury statute, § 1621, which allows a maximum fine of $2,000. Both sections provide imprisonment not to exceed 5 years.

4. Our review is bound by the principle "that the Government is entitled, once a jury returns a verdict of guilty, to have this Court view the evidence in the light most favorable to the prosecution in order to sustain the convictions." United States v. DeCavalcante, 440 F.2d 1264 (3d Cir. 1971).

5. The Eighth Circuit Court of Appeals also concluded "that the 'two-witness' rule in perjury cases is not constitutionally mandated." Koonce, supra, at 377.

1623. This argument fails to comprehend the effect of Lardieri's false statements on the course of the grand jury's investigation. Since his false denial of a check-signing role for the restaurant tended to cloud the true nature of Sorrentino's income producing operations, the investigation was affected, and the statement was material.

■ Lardieri next cites as error the district judge's failure to instruct the jury that a false statement must be made "willfully" for it to be an offense under 18 U.S.C. § 1623. The gist of Lardieri's defense is that he had been harassed by the government attorney, that he was fatigued when he testified before the grand jury, that his false statements were uttered out of emotion, rather than reason, and that they were therefore not made willfully.

Unlike the general perjury statute, § 1623 requires that a false statement be made "knowingly," rather than "willfully." The district judge charged the jury as follows:

> "Now, then, it must be knowingly made. Now knowingly, of course, means intentionally, voluntarily, as distinguished from mistakenly or accidentally or inadvertently."

> \* \* \* \* \* \*

> "Now, then, you come to the second count which is about signing checks. Well, there seems to be little doubt at this stage of the case that actually this defendant did sign checks. So the question arises why did he tell the Grand Jury that he didn't. Well, if you find that by reason of fatigue or anxiety about getting back to cater his banquet or by reason of anger or annoyance at delay in getting him out of the Grand Jury Room he actually did not know what he was talking about and that he actually did forget that he had signed checks and had actually believed that he didn't, then you

would acquit him. On the other hand, if you believe that in spite of all these circumstances surrounding his situation in the Grand Jury Room he did in fact know that he signed the checks and falsely and knowingly answered that he did not when he said no, then you would convict him."

The instruction adhered to the express terms of § 1623 and is proper. Although the predecessor perjury statute, § 1621, provides that the false testimony must have been made "willfully," Congress, when it enacted § 1623 in 1970, chose to change that term by substituting the word "knowingly."

Lardieri's remaining contention on this appeal is that the prosecutor's closing remarks to the jury disregarded the evidence and denied him a fair trial. We have reviewed these comments and find that they do not require the grant of a new trial.

We are troubled, however, about another point in this case which was neither briefed nor raised below. Because the record does not develop the matter fully, we cannot meet the issue but feel that some discussion is appropriate.

When Congress enacted the portion of the Organized Crime Control Act of 1970 now codified as § 1623 involved in this case, it confined its operations to false declarations before grand juries and courts. The requirements for a conviction were relaxed from that of the previous general perjury statute, perhaps influenced by the considerations that the necessity for encouraging truthful disclosures in court-supervised proceedings was more compelling than in other settings and that the means for preventing abuse of the statute were more readily available.[6]

■ Basically, the reason for having a witness testify before a grand jury is to discover the truth, not to lay the groundwork for a perjury prosecution.

---

6. For a discussion of whether the government is required to utilize § 1623 rather than § 1621 in indictments charging falsity before courts and grand juries, see United States v. Kahn, 472 F.2d 272, 283 (2d Cir. 1973), cert. denied, 411 U.S. 982, 93 S.Ct. 2270, 36 L.Ed.2d 958 (1973).

As the Supreme Court said in Bronston v. United States, 409 U.S. 352, 359, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973):

"The seminal modern treatment of the history of the offense concludes that one consideration of policy overshadowed all others during the years when perjury first emerged as a common law offense: 'That the measures taken against the offense must not be so severe as to discourage witnesses from appearing or testifying. Study of Perjury, reprinted in Report of New York Law Revision Commission, Legis. Doc.No.60, p. 249 (1935).'"

While Congress made it easier to secure convictions under § 1623, it balanced its approach to some degree by adding a recantation provision, § 1623(d), which could be helpful to a witness. This subsection reads:

"Where, in the same continuous court or grand jury proceeding in which a declaration is made, the person making the declaration admits such declaration to be false, such admission shall bar prosecution under this section if, at the time the admission is made, the declaration has not substantially affected the proceeding, or it has not become manifest that such falsity has been or will be exposed."

That this was to encourage disclosure by utilizing a combination of the carrot and stick approach is clear from the legislative history. "It serves as an inducement to the witness to give truthful testimony by permitting him voluntarily to correct a false statement without incurring the risk [of] prosecution by doing so." 2 U.S.Code Cong. & Adm. News p. 4024 (1970).[7]

If the recantation provision is to serve its purpose, it would seem to follow that in some circumstances there may be a requirement that the witness know of its existence.

Although there is no duty generally on the part of the government to explain a grand jury witness's right to him, United States v. DiMichele, 375 F. 2d 959 (3d Cir. 1967), this would not necessarily cover the situation where a government attorney chooses to enlighten the witness on the punitive provisions of the false swearing statute when the witness has no knowledge of the recantation provision.

The trial record in this case did not focus on the issue, and consequently, we do not have an adequate factual background to properly rule on this point.

Ordinarily this issue should be raised by a pretrial motion under Fed.R.Crim. P. 12(b)(2), and failure to do so is considered a waiver. However, the rule grants authority to grant relief from the waiver for cause shown, and this may be done by an appellate as well as a trial court. United States v. Gougis, 374 F.2d 758 (7th Cir. 1967); 8 Moore's Federal Practice § 12.03[4].

One of the considerations which must guide our judgment is whether the defendant would be prejudiced by enforcing the waiver. We conclude that he would and are concerned that the waiver might effectively be interposed to prevent consideration on the merits in a proceeding brought pursuant to 28 U.S. C. § 2255. Furthermore, the novelty of the issue presented under a statute recently enacted, the fact that Lardieri was not represented at the time he presented himself to the grand jury, and that the transcript of the grand jury proceedings would not have been available to defense counsel until a late stage in the case, all combine to provide cause for relief.

We therefore remand to the district court for a hearing to determine if the indictment should be dismissed.

---

7. *See* Annot. Recantation as defense in perjury prosecution, 64 A.L.R.2d 276 (1959).