**UNITED STATES of America, Plaintiff,**

v.

**William P. REILLY and John Patrick Dowd, Defendants.**

**Crim. A. No. 92–53–JJF.**

United States District Court, D. Delaware.

Feb. 11, 1993.

Mary McDonough, Asst. U.S. Atty., Wilmington, DE, for U.S.

Marc B. Tucker, and Scott E. Schroeder, of Skadden Arps Slate Meagher & Flom, Wilmington, DE, for defendant Reilly.

Joseph A. Hurley, Wilmington, DE, for defendant Dowd.

## OPINION

FARNAN, District Judge.

Defendant Reilly filed the present Motion to Dismiss Count One of the Indictment or, Alternatively, to Strike Its Assignments of Perjury on August 21, 1992. Defendant Dowd joined the motion by Order of the Court dated September 1, 1992. The Court denied the motion on November 11, 1992. This Opinion sets forth the Court's Findings and Conclusions consistent with that Order.

## I. FACTUAL BACKGROUND

By an Indictment issued July 14, 1992, William P. Reilly ("Defendant Reilly") and John Patrick Dowd ("Defendant Dowd") were each charged with one count of violating 18 U.S.C. § 1623(a), a felony for making false statements before a court or grand jury. The Indictment alleges that these statements were made to a grand jury that was charged with investigating possible criminal violations of federal envi-

ronmental law. The Indictment specifically references 33 U.S.C. § 1411 which prohibits the transportation of any material from the United States for the purposes of dumping it into ocean waters.[1]

## II. DISCUSSION

### A. Failure to Adequately Allege the Falsity, Knowledge, and Materiality

The Defendants contend that the Indictment fails to allege the essential elements constituting a violation of § 1623(a). Specifically, Defendants contend that the Indictment does not sufficiently allege that: 1) the statements were false, the Defendants knew that the statements were false at the time the statements were made, and 3) the statements were material to the grand jury investigation.

■ The standard for determining whether an indictment should be dismissed for failure to state an offense is whether the indictment states all of the elements of the offense charged, informs the defendant of the nature of the charge so he may prepare an adequate defense, and protects the defendant from later prosecution for the same offense. *Russell v. U.S.*, 369 U.S. 749, 763–64, 82 S.Ct. 1038, 1046–47, 8 L.Ed.2d 240 (1962). The elements of an offense under § 1623(a) are: 1) the defendant was under oath, 2) before a court or grand jury, 3) defendant made a false declaration, 4) the defendant did so knowingly, and 5) the false declaration was material. 18 U.S.C. § 1623(a); *see also U.S. v. Lardieri*, 497 F.2d 317, 319–20 (3d Cir.1974). Although the Indictment, on its face appears to allege each of these elements, the Defendants argue that the Indictment is insufficient under the more strict standard imposed on perjury indictments by the Court of Appeals for the Third Circuit. The Third Circuit has held that indictments alleging offenses under 18 U.S.C. § 1623 must "set forth the precise falsehood alleged and the factual basis of its falsity with sufficient clarity to permit a jury to determine its verity and to allow meaningful judicial review of the materiality of

those falsehoods." *U.S. v. Slawik*, 548 F.2d 75, 83 (3d Cir.1977).

### 1. Falsity

■ Defendant Reilly first contends that the Indictment fails to meet the Third Circuit standard because it fails to allege that the statements were false with sufficient precision and clarity. Under the Third Circuit's standard, an indictment must "set out the allegedly perjurious statements and the objective truth in stark contrast so that the claim of falsity is clear to all who read the charge. *U.S. v. Tonelli*, 577 F.2d 194, 195 (3d Cir.1978).

Contrary to Defendant Reilly's contentions, the Court finds that the Indictment satisfies the stark contrast test. The Indictment alleges that Defendant Reilly "knew that the incinerator ash on board the *Khian Sea* had been disposed of and off loaded from the *Khian Sea* by dumping the incinerator ash into the water in and around the Indian Ocean." The Indictment also states that during the Grand Jury proceedings Defendant Reilly testified that he had "no knowledge of what happened to the ash that was on board when they left Yugoslavia." A plain reading of Defendant Reilly's answer demonstrates a stark contrast with the alleged truth.

### 2. Knowledge

■ Defendant Reilly further contends that the Indictment fails to allege that the Defendant knew that the statements were false at the time he made them. The Indictment alleges that Defendant Reilly "knowingly" made certain statements, that the statements were false, and that Defendant Reilly "then and there well knew that the incinerator ash ... had been ... disposed of ... by dumping [it] into the water in and around the Indian Ocean." The Court finds that this allegation is sufficient to allege that Defendant Reilly knew that his statements of "no knowledge" were false at the time he made them.

---

1. The Indictment is set out in relevant part in the Appendix accompanying this Opinion.

### 3. Materiality

 The Court is likewise unpersuaded by the Defendant's argument that the Indictment fails to sufficiently allege that Defendant Reilly's allegedly false statements were material. Paragraphs 6 and 7 of the Indictment state the factual background of the Grand Jury's investigation, i.e. that the ash was disposed of en route from Yugoslavia to China, and that the Grand Jury was convened to investigate a possible violation of federal laws prohibiting dumping in ocean waters. Paragraph 8 states that "it was material to the grand jury investigation to ascertain if any person or persons had any knowledge as to where the incinerator ash on board the *Khian Sea* had been disposed of and off loaded." This allegation of materiality, together with the alleged falsehoods is sufficient to enable the Court to conduct "meaningful judicial review of the materiality of those falsehoods." *See Slawik*, 548 F.2d at 83.

### B. Ambiguity, Vagueness, and Overbreadth

 Defendant Reilly's final argument in support of dismissing Count 1 of the Indictment is that the questions propounded to Defendant, and Defendant's responses are fundamentally ambiguous, vague, and overbroad. The Court, however, does not find that the questions propounded to the Defendant were ambiguous. Defendant Reilly was asked, "Was there any unloading of the ash by the new owners to your knowledge between Yugoslavia and Singapore?", to which he responded, "I have no knowledge of that, Sir." Defendant Reilly was further asked "What happened to the ash." Defendant Reilly responded, "Again, I think it's on record, I have no knowledge of what happened to the ash that was on board when they left Yugoslavia." The Court is unable to detect an ambiguity in the Government's question, or in Defendant Reilly's answer. Read in context with Defendant's entire testimony, the Defendant's answer to "What happened to the ash?" demonstrates that Defendant understood the Government's question to refer to the where-

abouts of the ash that was on board the *Khian Sea* when the new owners took it out of Yugoslavia, but was not on board when the *Khian Sea* arrived in Singapore. "What happened to the ash", and Defendant's repeated assertion of "no knowledge" are clear enough to "provide a legally sufficient basis for a perjury conviction." A question is not ambiguous if persons of ordinary intellect can agree as to the meaning of the question. *U.S. v. Ryan*, 828 F.2d 1010, 1015 (3d Cir.1987). Persons of ordinary intellect reading the question could agree that the question asked the Defendant to communicate anything he knew regarding the disposal of the incinerator ash that was on board the *Khian Sea* when the ship sailed out of Yugoslavia en route to Singapore. The Indictment plainly alleges that Defendant Reilly denied having any such knowledge.

### C. Defendant Dowd

The Court likewise finds that Count Two of the Indictment alleges with sufficient precision and clarity that Defendant Dowd knowingly made false declarations to the investigating grand jury. Count Two alleges that Defendant Dowd was asked, "Do you know what happened to the ash?", to which Defendant Dowd responded, "No." Defendant Dowd was further asked, ". . . [B]ut you didn't ask where it went? You didn't want to know where it went?", to which Defendant Dowd responded, "No, I didn't ask and I don't know. All right? Nor did he tell me." These statements set out by the Government stand in stark contrast to the alleged truth—that Defendant Dowd "then and there well knew that the incinerator ash on board the *Khian Sea* had been discharged, disposed of and off loaded from the *Khian Sea* by dumping the incinerator ash into the water in and around the Indian Ocean." Thus, the Indictment sufficiently alleges that Defendant Dowd's declarations were false. Furthermore, the Court's findings and conclusions regarding the Indictment's allegations of materiality and knowledge with respect to Defendant Reilly, are equally applicable to Defendant Dowd since the

allegations mirror each other. Finally, the questions and answers upon which Defendant Dowd's perjury charge is based are not too ambiguous or vague so as to be legally insufficient to support a perjury conviction. Defendant Dowd clearly and unmistakably stated that he did not ask about the disposal of the ash, and he did not know where the ash went.

## III. CONCLUSION

The Court concludes that the Indictment sufficiently alleges each of the elements of perjury under 18 U.S.C. § 1623(a). The Indictment sets out with sufficient precision and clarity that each Defendant knowingly made false material declarations to the investigating grand jury. Furthermore, the Court is unable to conclude that the questions propounded to either Defendant were so vague as to be legally insufficient to support a perjury conviction.

An appropriate Order has been entered.

## APPENDIX
## THE GRAND JURY CHARGES THAT:

### COUNT ONE

At all times material to this indictment,

1. The *Khian Sea* a/k/a *Felicia*, a/k/a *Pelicano*, a/k/a *San Antonio* (hereinafter *Khian Sea*) was a bulk cargo ship, Identification Number 6905600, registered in Monrovia, Liberia....

. . . .

5. On or about May 22, 1988, the *Khian Sea* departed the lower Delaware Bay and sailed into the Atlantic Ocean with approximately 11,000 tons of incinerator ash remaining on board and with no stated destination. In approximately July 1988, the *Khian Sea* arrived in Yugoslavia for repairs and with approximately 11,000 tons of incinerator ash in its cargo holds.

6. In or about August 1988, the *Khian Sea* departed Yugoslavia and in September 1988 sailed through the Suez Canal. The *Khian Sea* arrived in Singapore in November 1988, with its cargo holds empty and, without the incinerator ash that was on board in Yugoslavia.

7. On or about January 9, 1990, the federal grand jury in the District of Delaware at Wilmington, Delaware, was conducting an investigation to determine whether violations of Title 33, United States Code, Section 1411 ... and other federal criminal statutes, had been committed in connection with the off-loading and disposal of the incinerator ash placed on board the *Khian Sea* in approximately August 1986.

8. It was material to the grand jury investigation to ascertain if any person or persons had any knowledge as to where the incinerator ash on board the *Khian Sea* had been disposed of and off loaded.

9. .... Coastal Carriers was in the business of, among other things, ship operation and acting as shipping agents for the owners and operators of various ships, including the *Khian Sea*.

10. The defendant, WILLIAM P. REILLY, was vice-president of Coastal Carriers and acted as agent for the owners and operators of the *Khian Sea*.

11. On or about January 9, 1990, in the District of Delaware, the defendant WILLIAM P. REILLY appeared as a witness before the grand jury in Wilmington, Delaware. The defendant, WILLIAM P. REILLY, was told that the grand jury was investigating possible environmental criminal violations of federal law in connection with the disposal of and off-loading of the incinerator ash on board the *Khian Sea*. The defendant, WILLIAM P. REILLY, was placed under oath, and thereafter, knowingly made the following statements in response to questions propounded to him with respect to the material matter being investigated by the grand jury:

Q. Was there any unloading of the ash by the new owners to you [sic] knowledge between Yugoslavia and Singapore?

A. **I have no knowledge of that, Sir.**

Q. Did you ever exercise any control over anything on that ship after it was allegedly sold in Yugoslavia to Romo Shipping?

A. **I'm not quite certain that I understand your question** ...

Q. Did you direct anyone to take anything off of that ship after it left Yugoslavia? Any equipment?

A. **No, Sir.**

Q. Any ash?

A. **No, Sir.**

. . . .

Q. What happened to the ash?

A. **Again, I think it's on record, I have no knowledge of what happened to the ash that was on board when they left Yugoslavia.**

Q. No knowledge?

A. **No, Sir.**

Q. You never talked to anybody at Romo about what happened to the ash?

A. **No, Sir.**

. . . .

12. The aforesaid statements and answers (preceded by "A" and set forth in **bold print**) of the defendant WILLIAM P. REILLY, that he had no knowledge of the disposal and off-loading of the incinerator ash on board the *Khian Sea*, were false in that the defendant, WILLIAM P. REILLY, then and there well knew that the incinerator ash on board the *Khian Sea* had been discharged, disposed of and off-loaded from the *Khian Sea* by dumping the incinerator ash into the water in and around the Indian Ocean.

All in violation of Title 18, United States Code, Section 1623(a).

THE GRAND JURY FURTHER CHARGES THAT:

## COUNT TWO

13. Paragraphs one through nine of Count One are incorporated herein by reference as though set forth in full.

14. The defendant, JOHN PATRICK DOWD, was President of Coastal Carriers and acted as agent for the owners and operators of the *Khian Sea*.

15. On or about February 14, 1990, in the District of Delaware, the defendant JOHN PATRICK DOWD appeared as a witness before the grand jury in Wilmington, Delaware. The defendant, JOHN PATRICK DOWD, was told that the grand jury was investigating possible environmental criminal violations of federal law in connection with the disposal and off-loading of the incinerator ash on board the *Khian Sea*. The defendant, JOHN PATRICK DOWD, was placed under oath and, thereafter, knowingly made the following statements in response to questions propounded to him with respect to the material matter being investigated by the grand jury, as follows:

A Grand Juror: Do you know what happened to the ash?

The Witness: **No.**

A Grand Juror: You have no idea?

The Witness: **No, I don't.** I honestly have not been on that ship for two and a half years.

A Grand Juror: Seeing how you had all this concern of not being able to unload this ash, you didn't ask anybody where it went?

The Witness: Who is there to ask?

A Grand Juror: I guess you could start with asking the captain. He ought to know where it went.

The Witness: They say—he's a funny guy. The first time I met him. Honduran person. He said "The ash is gone." And I said—

A Grand Juror: Just said good, but you didn't ask where it went? You didn't want to know where it went?

The Witness: **No, I didn't ask and I don't know.** All right? **Nor did he tell me.**

16. The aforesaid statements and answers (preceded by "The Witness" and set forth in **bold print**) of the defendant JOHN PATRICK DOWD, that he did not know of the disposal and off-loading of the incinerator ash on board the *Khian Sea*, were false in that the defendant, JOHN PATRICK DOWD, then and there well knew that the incinerator ash on board the *Khian Sea* had been discharged, disposed of and off loaded from the *Khian Sea* by dumping

the incinerator ash into the water in and around the Indian Ocean.