NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

---

No. 09-3419

---

UNITED STATES OF AMERICA
Appellant

v.

ANTOINE DOBSON,
a/k/a ANT

---

On Appeal From the United States District Court
For the District of New Jersey
(D.C. Crim. No. 2:08-cr-00779-PGS-1)
District Judge: Honorable Peter G. Sheridan

---

Argued April 20, 2010

BEFORE: SCIRICA, AMBRO and ALARCÓN[*], Circuit Judges.

Filed: May 19, 2010

---

Paul J. Fishman
United States Attorney
George S. Leone
Chief United States Attorney
John F. Romano **(ARGUED)**
Assistant United States Attorney

---

[*]The Honorable Arthur L. Alarcón, Senior Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

Office of the United States Attorney
970 Broad Street, Room 700
Newark, New Jersey 07102-2535
*Counsel for Appellant*

Richard Coughlin
Federal Public Defender
Chester M. Keller **(ARGUED)**
First Assistant Federal Public Defender
Federal Public Defender Office
District of New Jersey
1002 Broad Street
Newark, New Jersey, 07102
*Counsel for Appellee*

---

OPINION OF THE COURT

---

ALARCÓN, Circuit Judge:

The United States appeals from the District Court's August 13, 2009 order granting Antoine Dobson's motion for judgment of acquittal on Count Five of the Superseding Indictment. Based on our review of the record, we conclude that the District Court failed to consider the materiality of the evidence in the light most favorable to the Government in ruling on the motion for judgment of acquittal. Accordingly, we reverse the District Court's order and remand with instructions that the District Court reinstate the jury's verdict on Count Five and proceed to sentence Dobson on Count One and Count Five.

**I**

**A**

Viewed in the light most favorable to the Government, and drawing all inferences in favor of the jury's verdict, the record discloses that the following evidence was before the jury. Dobson was a Deputy United States Marshal prior to his conviction. Despite the United States Marshals Service's ethical code of conduct prohibiting the association of Deputy United States Marshals with known felons other than immediate family members, Dobson maintained a close friendship with Larry Langforddavis, a seven-time convicted felon.

On September 1, 2007, Langforddavis was stopped for speeding by Officer Espinosa of the Fanwood Borough Police Department. A search warrant was executed which turned up a fully loaded handgun, 48 pink Ecstasy pills, and an official United States Marshals Service placard that had been assigned to Dobson. On September 17, 2007, Dobson posted a bond for Langforddavis's release in the amount of $175,000.[2] The information sheet submitted to the bail bondsman in connection with the September 2007 bond, which was signed by Dobson, indicated that Langforddavis was Dobson's adopted brother and that they had known each other for fifteen years.

In November 2007, Dobson sought and received approval from the United States Marshals Service for the purchase of a secondary weapon to be used as an off-duty or backup weapon. He purchased a Glock 27, .40 caliber handgun through the United States Marshals Service, and took possession of the firearm, Serial No. LSK711, on December 6,

---

[2]Dobson had also posted a bond on May 19, 2007 for $20,000.

2007. Dobson was never authorized to carry the weapon, however, because he had not been "qualified" by the United States Marshals Service, i.e., demonstrated that he was proficient, in the use of that firearm.

On the evening of January 4, 2008, Dobson attended the Jersey Girls strip club in Elizabeth, New Jersey, with Langforddavis and other friends to celebrate his birthday. When Langforddavis arrived at the club, Dobson introduced him to a club security employee as a corrections officer. As a result, the security employee permitted Langforddavis to enter the club without searching him for weapons.

In the early hours of January 5, 2008, Dobson was the victim of an attempted robbery in the Jersey Girls parking lot. He was assaulted and suffered injuries to his head and hands. Dobson was escorted back into the club by Jersey Girls employees who tended to his wounds. Langforddavis approached Dobson, "got into very, very close quarters with him" and they "exchanged a couple of words." Langforddavis then "shot out the front door" of the club, jumped into his vehicle and sped off in pursuit of the vehicle that had left the parking lot.

Langforddavis returned to the club ten to twenty minutes later. In Dobson's presence – about four or five feet away – Langforddavis stated in a "very celebratory" manner that "he got two of them and sprayed the vehicle." Two Jersey Girls employees testified that they took Langforddavis's statement to mean that he had shot at the people who had assaulted Dobson, and that he had shot up the car they were driving. Dobson

responded that he "did not care, he wanted his gun," and he wanted to get out of there. The Jersey Girls employees called an ambulance and the police to the scene. Before the police arrived, however, Dobson and Langforddavis left to go to the emergency room at Trinitas Hospital in Elizabeth, New Jersey.

Responding to a report that a man had been shot, Elizabeth Police Officers Michael Kelly, Edward Benenati, and Paul Pereira arrived at the hospital at approximately 3:30 a.m. Sergeant Kelly testified that Dobson appeared to be alert, conscious, and a little disheveled. He was bleeding from injuries to his head and hand. He appeared to be intoxicated, but not drunk.[3]

As Sergeant Kelly and Officer Benenati were questioning Dobson in the hospital, Langforddavis "walked right up to [Benenati], put his arm around [him] and said . . . 'How you doing, bro. We all cops and CO's. I'm with the state. I got my brace right here.'" Langforddavis "lifted up his left leg pulling up his pant leg and exposed a Glock small firearm in an ankle brace." When Langforddavis made this statement about being a state law enforcement officer, Dobson, who was sitting upright three to five feet from Langforddavis and Benenati, did not correct Langforddavis's statement or otherwise

---

[3]Assistant Chief Deputy United States Marshal John Sarino and Deputy United States Marshal Lourdes Timberman went to the hospital on January 5, 2008, at approximately 4:30 a.m. or 5:00 a.m. to find out what had occurred with Dobson. Deputy Marshal Timberman observed that Dobson was sitting upright on the hospital bed, and was lucid and coherent. Dobson spoke to the Marshals without slurring his words or wobbling back and forth. He asked to speak privately with Marshal Timberman because he was concerned about whether he might be in trouble with the Chief Deputy United States Marshal, Officer Timberman's husband.

indicate to Officers Benenati and Kelly that Langforddavis was not in fact a law enforcement officer.

Officer Benanti informed Officer Pereira that Langforddavis had identified himself as a corrections officer, but that no one had seen any official identification. Officer Pereira questioned Langforddavis further in the emergency room lobby and asked to see his credentials. Officer Pereira asked Langforddavis whether he was "on the job," to which Langforddavis replied, "No."[4] Officer Pereira became confused and thought he must be speaking to the wrong individual, so he sought out Officers Benenati and Kelly, who had seen Langforddavis display his weapon, to clarify the situation. During this time, Langforddavis left the hospital and drove off hastily in his vehicle, although it had a flat tire and he abandoned a "perfectly good" spare tire in the parking lot.

When Officer Pereira discovered that Langforddavis had left the hospital, he immediately put out a dispatch transmission informing "all units in the area [that if] a silver Range Rover with a black driver [was spotted], he is in possession of a weapon and [should be] approach[ed] with caution." Officer Pereira questioned Dobson about Langforddavis's identity, which was still unknown at that time. Dobson provided evasive answers and was uncooperative. He told Pereira that "the only thing he really knew [was that] his first name is Larry." Officer Benenati also questioned Dobson about Langforddavis's identity. Dobson told Officer Pereira that, while he and Langforddavis

[4]It was established through other witness testimony that "on the job" is the vernacular for "working with law enforcement."

were “very close friends, . . . kind of like family,” he did not know Langforddavis’s name, telephone number, or address. Dobson gave them “the run-around,” telling Officers Benenati and Pereira that he only knew Langforddavis from the club by his nickname, Lay Lay. Later, back at police headquarters, the officers were able to determine Langforddavis’s identity through the use of computer searches of available databases.

In the early morning hours of January 19, 2008, Sergeant Kelly, who had witnessed Langforddavis display a firearm in the hospital, observed Langforddavis in the Jersey Girls parking lot. Upon approaching Langforddavis and patting him down, Sergeant Kelly felt a firearm on Langforddavis’s ankle and retrieved a black Glock Model 27, .40 caliber, from an ankle holster. It appeared to be the same black handgun and ankle holster that Sergeant Kelly had seen Langforddavis display in the hospital two weeks earlier on January 5, 2008. Sergeant Kelly asked Langforddavis if he was in law enforcement. Langforddavis replied that he was not. He also stated he did not have a permit to carry a firearm. Langforddavis was arrested for illegal possession of a weapon. The gun recovered on January 19, 2008, was the same weapon purchased by Dobson through the United States Marshals Service as a secondary service weapon in November 2007. On January 22, 2008, Dobson posted a bond in the amount of $25,000 for Langforddavis’s release.

On January 23, 2008, Detective Paul Pasternak interviewed Dobson by telephone and arranged to set up an in-person interview. In the January 23, 2008 phone interview, Dobson stated that he had known Langfordavis since 2005. On January 25, 2008,

Detective Pasternak interviewed Dobson in person at the Elizabeth Police Department. During this interview, Dobson gave an account of his friendship with Langforddavis and his knowledge of Langforddavis's criminal history that conflicted with the information he provided in the earlier January 23, 2008 interview.

During the January 25, 2008 interview, the record shows that Dobson acknowledged that Langforddavis was present at the hospital on January 5, 2008.

> Detective Pasternak: And then Larry [Langforddavis] was there at - also at the hospital.
>
> Dobson: Yeah he was there.
>
> Detective Pasternak: See that was the other thing too is that he was there at the hospital. . .
>
> Dobson: Mm hmm.
>
> Detective Pasternak: . . . and he was hangin' out waiting for you. And that's when these same cops that were there at the scene they saw him and they went to go talk to him . . . and he . . . jetted.
>
> Dobson: Yeah- . . .

This conversation was recorded on audio and videotape.[5]

**B**

On October 9, 2008, Dobson testified before a federal grand jury, which was conducting an investigation to determine whether Dobson violated certain criminal laws

---

[5]The video, an audio recording, and the transcript of the conversation were played for the jury at Dobson's trial and introduced into evidence.

involving unlawful possession of a firearm by a convicted felon and the providing of such a firearm to a convicted felon. Dobson was questioned about the events of the morning of January 5, 2008. The transcript of the grand jury proceedings reflects the following colloquy:

> Q: Do you know whether Langford Davis [sic] had a gun on him that night?
> A: No.
> Q: You don't know whether he had one on him?
> A: No. I don't even remember seeing him at the hospital.

One week later, Dobson and Langforddavis were charged in a two-count indictment. The grand jury subsequently returned a six-count Superseding Indictment charging Dobson with: Count One – disposing of a firearm and ammunition to someone convicted of a felony; Count Two – aiding and abetting the possession of a firearm by a convicted felon; and Counts Three to Six – perjury relating to his October 9, 2008, testimony. Count Five, at issue in this appeal, alleged that Dobson committed perjury when he testified before the grand jury that: he did not know, on January 5, 2008, whether Langforddavis "had a gun on him"; and that he did not remember seeing Langforddavis at the hospital that night. The Superseding Indictment at Count Five contains an excerpt of Dobson's grand jury testimony that has a transcription error – the insertion of a question mark ("?") where there should be a period (".") in an answer by Dobson to a question posed to him. It reads:

> Q: Do you know whether Langford Davis [sic] had a gun on him that night?

A: No.
Q: You don't know whether he had one on him?
A: No. I don't even remember seeing him at the hospital?

On June 29, 2009, a seven-day jury trial commenced in the District Court for the District of New Jersey. During the trial, the jury heard an audio recording and received a transcript of Dobson's grand-jury testimony.[6]

After the Government rested its case-in-chief, Dobson moved for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. The District Court reserved decision. Dobson renewed his Rule 29 motion after presenting his defense. The District Court again reserved decision.

After several days of deliberations, the jury found Dobson guilty of knowing disposal of a firearm to a felon as charged in Count One, and perjury as alleged in Count

---

[6]The Government's theory of the case was, in part, that Dobson purchased the secondary service weapon for Langforddavis's use after Langforddavis's gun was confiscated as a result of his arrest in September 2007. In support of its theory, the Government pointed to the following evidence: Dobson was never authorized to carry the weapon because he was never "qualified" to use it by the United States Marshals Service; Langforddavis displayed a weapon looking like Dobson's Glock 27 to officers of the Elizabeth Police Department on January 5, 2008; Langforddavis was arrested for illegal possession of Dobson's weapon on January 19, 2008.

The Government also argued that the jury could reasonably infer that Dobson did not carry his weapon out with him on January, 19, 2008, or leave it under the seat of Langforddavis's car as he testified, but rather that Langforddavis had it in his possession all along. The evidence supporting this inference offered by the Government is the fact that on January 15, 2008, Dobson had surgery on the hand that he would use to operate a firearm and was still recovering. Ten days later on January 25, 2008, as captured in the videotaped interviewed with Detective Pasternak, Dobson was still having difficulty holding a pen to sign the waiver presented to him for his signature.

Five. Thereafter, Dobson renewed his motion for a judgment of acquittal. He argued that "[j]udgments of acquittal are warranted on Counts One and Five because the government failed to adduce sufficient evidence to establish, beyond a reasonable doubt, the necessary elements of the charged statutes." In his motion for judgment of acquittal, Dobson did not argue that the district court should grant his Rule 29 motion because of the typographical error in the Superseding Indictment.[7] The District Court denied the motion with respect to

[7]Dobson's Rule 29 motion reads as follows:

> Defendant Antoine Dobson presents this motion, and moves for the following relief:
>
> 1. Mr. Dobson moves for judgments of acquittal, pursuant to Fed.R.Crim.P. 29, on Counts One and Five of the indictment. These counts charge knowing disposal of a firearm to a person under indictment for, or convicted of, a felony, and perjury.
>
> 2. According to these counts, Mr. Dobson knowingly disposed of a firearm to Larry Langford-Davis from on or about January 5, 2008 to on or about January 19, 2008, and further, committed perjury when he testified to the grand jury regarding whether he remembered seeing Mr. Langford-Davis at the hospital in the morning hours of January 5, 2008.
>
> 3. The evidence adduced at trial is not sufficient to sustain a conviction on these counts. As to Count One, the evidence failed to establish the government's version of events, which was based on the theory that Mr. Dobson had purchased his personal firearm with the intent to give it to Mr. Langford-Davis. Mr. Dobson presented a defense in which the disposal to Mr. Langford-Davis occurred as a result of mistake and accident, and was not made knowingly. The jury's findings establish that the jury, indeed, rejected the government's theory and found Mr. Dobson's version of events to be true. As to the perjury count, it failed to establish that Mr. Dobson knew his statement to be false when he made it and that the statement was material.
>
> 4. Absent this evidence, the government has failed to make its case on these counts.
>
> 5. Consequently, judgments of acquittal are in order on these counts.
>
> 6. Mr. Dobson relies upon and incorporates the accompanying

Count One. It granted the motion as to Count Five.

The Government filed a timely notice of appeal from the District Court's order vacating the jury's verdict and entering a judgment of acquittal as to Count Five of the Superseding Indictment. The District Court had jurisdiction over this matter under 18 U.S.C. § 3231. This Court has jurisdiction over the Government's appeal pursuant to 18 U.S.C. § 3731.

## II

### A

The Government argues that "[t]he [District] Court . . . failed to apply the appropriate analysis for sufficiency of the evidence, failed to consider any of the evidence offered at trial, and failed to view that evidence [and all reasonable inferences] in the light most favorable to the jury's verdict. Instead, the [District] Court's ruling was based on a minor typographical mistake in the Superseding Indictment—a mistake that was wholly irrelevant because it could provide no basis for a judgment of acquittal." (Appellant's Br. 12-13.)

A motion for a post-verdict judgment of acquittal requires the district court to "review the record in the light most favorable to the prosecution to determine whether *any*

---

Memorandum of Law.

WHEREFORE, Mr. Dobson respectfully requests that this Motion for Judgments of Acquittal as to Counts One and Five be Granted and that this Court enter a judgment of acquittal on these counts of the indictment.

rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence." *United States v. Wolfe*, 245 F.3d 257, 261 (3d Cir. 2001) (emphasis added); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (same). The district court must also "draw all reasonable inferences in favor of the jury verdict." *United States v. Anderskow*, 88 F.3d 245, 251 (3d Cir. 1996). "Thus, a finding of insufficiency should 'be confined to cases where the prosecution's failure is clear.'" *United States v. Smith*, 294 F.3d 473, 477 (3d Cir. 2002) (quoting *United States v. Leon*, 739 F.2d 885, 891 (3d Cir. 1984)). "This Court reviews the grants or denials of Rule 29 motions *de novo* and independently applies the same standard as the District Court." *United States v. Bobb*, 471 F.3d 491, 494 (3d Cir. 2006).

**B**

In an oral ruling from the bench on Dobson's motion for acquittal, the District Court reasoned follows:

> So that's the entire count, the issues I have with it is the question mark on the last line within the superseding indictment, "at the hospital" question mark and it went to the jury in that manner. It seems to me the question mark may give some ambiguity to the answer or it was up in the air, Mr. Dobson's answer.
>
> And the materiality, "I don't even remember seeing him at the hospital." Whether that's material is certainly in dispute. So those two issues give rise to some hesitancy acknowledging the verdict on that charge.
>
> It seems that the jury could have been confused as to - - at the hospital, the question mark after it. And it was never

> well explained either by me or by either of the parties or if we even understood there was a question mark there.
>
> Certainly, "I don't remember seeing him at the hospital?" I don't know what the materiality that the question mark brings to the perjury count. The government would like to take the position that the overwhelming question in that portion, whether he knew whether Langforddavis had a gun on him that night. The answer to that was no. The rest of it is immaterial. But I don't see it that way. The answers together may have given doubt or may have convinced the jury that what Mr. Dobson was saying was incorrect but it doesn't mean that it went to the materiality of that charge.
>
> So, with regard to the Count 5, after much deliberation I'm going to vacate that verdict.

The Government asserts that the District Court erred in concluding that Dobson's testimony before the grand jury did not satisfy the element of materiality because of the typographical error contained in the Superseding Indictment, misquoting Dobson's grand jury testimony.

"It is well established that a perjurious statement is material . . . if it has a tendency to influence, impede, or hamper the grand jury from pursuing its investigation." *United States v. Lardieri*, 497 F.2d 317, 319 (3d Cir. 1974). Furthermore, "a statement may be material even if no agency actually relied on the statement in making a decision." *United States v. McBane*, 433 F.3d 344, 350 (3d Cir. 2005).

The grand jury called Dobson to testify as part of its investigation regarding whether Dobson "violated certain federal criminal laws involving the unlawful possession of a firearm by a convicted felon and the providing of such a firearm to a convicted felon

[(Langforddavis)] in violation of Title 18 of the United States Code 922." Dobson was informed of the scope of the grand jury's investigation prior to giving his testimony. Whether Langforddavis had a firearm in his possession on January 5, 2008, was clearly material to the grand jury's investigation. It is undisputed that Langforddavis displayed a Glock handgun to law enforcement officers on January 5, 2008, while he was at the hospital and within hearing and sight of Dobson. Accordingly, Dobson's awareness of Langforddavis's presence at the hospital on January 5, 2008 was clearly material to the grand jury's investigation.

In concluding that Dobson's testimony was not material because of a typographical error in the punctuation of his grand jury testimony as it was presented in the Superseding Indictment, the District Court overlooked the fact that the jury had: (1) heard an audio and videotaped recording of Dobson admitting to Detective Pasternak that he knew Langforddavis was at the hospital on January 5, 2008; and, (2) also received an accurately transcribed, correctly punctuated transcript of the statement in question.

Dobson asserts that the only date material to the grand jury's investigation was January 19, 2008, when Langforddavis was arrested by Sergeant Kelly for possession of a firearm. The Government was investigating Dobson's role in providing a firearm to a convicted felon. Thus, the scope of the grand jury's investigation was not limited to the events of January 19, 2008.[8] We agree with the Government that whether Langforddavis

---

[8]The Superseding Indictment alleges that:

displayed a firearm in Dobson's presence on January 5, 2008, and whether the weapon he displayed was the same one Langforddavis had in his possession when he was arrested two weeks later, were areas that were within the scope of the grand jury's investigation. (Appellant's Br. 19.)

Dobson's testimony before the grand jury that he did not know whether Langforddavis had a firearm on January 5, 2008, and that he did not remember seeing him at the hospital on that date, had a tendency to impede the grand jury's attempt to identify witnesses to Langforddavis's possible criminal conduct. Therefore, it was material. *Lardieri*, 497 F.2d at 319.

**III**

The statute under which Dobson was charged in Count Five provides, in relevant part, that "[w]hoever under oath . . . in any proceeding before . . . any court or grand jury of the United States knowingly makes any false material declaration" is guilty of perjury. 18 U.S.C. § 1623(a). To prove that a person has committed perjury before a grand jury, the Government must prove the following elements: (1) the defendant testified before a grand jury under oath; (2) the defendant knowingly made a false statement; and (3) the false statement was material to the grand jury's investigation. *United States v. Friedhaber*,

---

> "From at least on or about January 5, 2008, to on or about January 19, 2008 . . . DOBSON . . . knowingly disposed of a firearm and ammunition, namely a black Glock model 27 .40 caliber semi-automatic handgun . . . to LARRY LANGFORDDAVIS, knowing and having reasonable cause to believe that LARRY LANGFORDDAVIS was under indictment for, and had been convicted in a court, of a [felony]."

856 F.2d 640, 642 (4th Cir. 1988) (en banc).

The Government contends that it "provided ample evidence from which a rational jury could find that each of Dobson's charged statements––that he did not know if Langforddavis had a gun on January 4-5[, 2008] and did not remember seeing him at the hospital––was knowingly false." (Appellant's Br. 27.) The Government argues that its witnesses presented evidence that "Dobson saw Langforddavis display a gun at the hospital . . .; Dobson remembered that he saw Langforddavis at the hospital . . .; and Dobson knew that Langforddavis had a gun on January 4 - 5[, 2008,] even before they went to the hospital." (Appellant's Reply Br. 6.) We agree.

When viewed in the light most favorable to the jury's verdict, this evidence, and the reasonable inferences to be drawn therefrom, are sufficient to demonstrate to any rational trier of fact beyond a reasonable doubt that Dobson testified falsely before the grand jury when he stated under oath that he did not know whether Langforddavis had a gun on him in the early morning hours of January 5, 2008, and that he did not remember seeing Langforddavis at the hospital that morning.

## IV

### A

Dobson contends that the fact that the jury acquitted him on Counts Three and Four, which charged that he falsely testified before the grand jury that he never gave the Glock 27 he purchased in November 2007 to anyone, (Count Three), and that his gun was in his

house on the early morning of January 5, 2008, (Count Four), demonstrates that "[t]here can be no doubt that the [Government] had failed to establish beyond a reasonable doubt a fundamental allegation of its case—that Langforddavis had possession of Mr. Dobson's newly purchased firearm on January 5, 2008" because the jury "completely rejected the allegation in two counts of the indictment." (Appellee's Br. 17.) We disagree.

The allegations in Count Five concern Dobson's testimony before the grand jury that: (1) he did not know whether Langforddavis had *any* gun on him on January 5, 2008, not whether Langforddavis was in possession of Dobson's gun; and, (2) he did not remember seeing Langforddavis in the hospital. In finding Dobson guilty of the perjury charged in Count Five, the jury could reasonably have concluded: (1) that Dobson lied about his knowledge of whether Langforddavis was carrying a gun on January 5, 2008, *without* deciding that it was indeed Dobson's gun; or (2) that Dobson lied about not remembering seeing Langforddavis at the hospital; or (3) both.

Assuming *arguendo* that the verdicts returned by the jury are inconsistent, "there is no requirement that a jury's verdict be consistent." *United States v. Mussare*, 405 F.3d 161, 167 (3d Cir. 2005). It is not the province of the courts to "inquir[e] into a jury's thought processes." *United States v. Powell*, 469 U.S. 57, 67 (1984).

**B**

Dobson maintains further that "the witnesses at trial called by the [Government] and by . . . Dobson describe[d] the physical condition of Dobson on January 5, 2008 in the

hospital as a man who could easily not remember more than nine months later in October 9, 2008 whether Langforddavis had been at the hospital." (Appellee's Br. 20.) The record presented by the Government was that Dobson was lucid, coherent, alert, and responsive at the hospital. "The fact that the testimony is contradictory does not mean the evidence is insufficient, only that the jury must make credibility determinations." *Gov't of the V.I. v. Isaac*, 50 F.3d 1175, 1179 (3d Cir. 1995). The jury was not required to draw an inference that Dobson was not capable of remembering whether Dobson had been in the hospital on January 5, 2008 because of his physical condition and state of intoxication. Based on the testimony presented by Government witnesses, the trial jury was free to conclude that Dobson was physically and mentally capable of perceiving that Langforddavis was present in the hospital, and that he was armed with a firearm. We are persuaded that the Government met its burden of presenting sufficient evidence to persuade any rational trier of fact that Dobson's grand jury testimony as to Count Five was knowingly false beyond a reasonable doubt.

**Conclusion**

As compelled by the law of this Circuit, we have independently reviewed the record in the light most favorable to the Government, and have drawn all reasonable inferences in favor of the jury's guilty verdict on Count Five of the Superseding Indictment. The record shows that Langforddavis's display of a firearm in the presence of Dobson and others on January 5, 2008 – a firearm similar in appearance to Dobson's weapon that was

subsequently found to be illegally in Langforddavis's possession – was relevant and material to the grand jury's investigation into whether Langforddavis was in possession of a firearm on that date in violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(a)(2), and what role, if any, Dobson may have played in providing Langforddavis with access to a weapon on that night.

The transcript of Dobson's grand jury testimony was presented to the trial jury as evidence that he committed perjury. It reflected that Dobson testified before the grand jury that he did not know that Langforddavis had a gun in his possession on January 5, 2008. He also testified in response to a question by an Assistant United States Attorney that he did not even remember seeing him at the hospital. The transcripts of the grand jury proceedings disclose that the latter statement was a declarative statement, and not a question.

The Superseding Indictment quoted the same testimony in its allegation in Count Five that Dobson had committed perjury. It is undisputed that the person who drafted the Superseding Indictment erroneously placed a question mark after Dobson's response, "No. I don't even remember seeing him at the hospital."

Assuming that the trial jury in fact compared the recitation of Dobson's testimony before the grand jury in Count Five of the Superseding Indictment with grand jury transcript of the same testimony, we must infer that the jury concluded that the insertion of a question mark was a typographical error. *See Smith*, 294 F.3d at 476 (In reviewing a

Rule 29 motion, the court must “draw all reasonable inferences” in favor of the verdict). Accordingly, we conclude that the District Court failed to draw all reasonable inferences in favor of the Government in determining that it did not demonstrate that Dobson’s testimony that “he didn’t even remember seeing [Langforddavis] at the hospital” on January 5, 2008 was not material to the scope of the grand jury’s investigation.

We REVERSE the District Court’s order granting Dobson’s Rule 29 motion for a judgment of acquittal as to Count Five of the Superseding Indictment. We REMAND this matter to the District Court with instructions to reinstate the jury’s guilty verdict on Count Five and to proceed to sentence Dobson on Count One and Count Five.